**George R. TYREE, Plaintiff,**

**v.**

**John H. RILEY, Administrator, United States Department of Transportation, Federal Railroad Administration, Defendant.**

**Civ. A. No. 88–2494 (AJL).**

United States District Court, D. New Jersey.

Feb. 7, 1992.

George R. Tyree, pro se.

Michael A. Chagares, Asst. U.S. Atty., Newark, N.J., for defendant.

SUPPLEMENTAL OPINION

LECHNER, District Judge.

This is an employment discrimination action brought by pro se plaintiff George R. Tyree ("Tyree") under Title VII of the Civil Rights Act of 1964 ("Title VII") against defendant John H. Riley ("Riley"), Administrator of Federal Railroad Administration (the "FRA") of the United States Department of Transportation.[1] Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331 and 1343.

On 18 December 1991 Tyree filed a motion for a jury trial and compensatory damages as permitted under the recently enacted Civil Rights Act of 1991 (the "1991 Civil Rights Act") Pub.L. No. 102–166, 105 Stat. 1071 (1991) (codified as amended at 42 U.S.C. §§ 1981, 2000e *et seq.* (1991).[2] On

---

1. Tyree alleges racial discrimination motivated the FRA's decision to deny his request for a one-year leave of absence. The specific facts surrounding the allegations are omitted as they are not determinative of the motion at issue.

2. The following was submitted in support of the motion: Memorandum of Law in Support of Plaintiff's Motion for Jury Trial; Brief in Opposition to Plaintiff's Motion and the Reply Memo-

27 January 1992, this motion was denied by a Letter–Opinion and Order, filed 27 January 1992 (the "27 January 1992 Opinion and Order"). The 27 January 1992 Opinion and Order was a four-page opinion which was designed to put the parties on notice for the trial scheduled for 6 March 1992. This supplemental opinion provides a more detailed rationale behind the 27 January 1992 Opinion and Order.

*Discussion*

As discussed below, courts in most of the circuits prior to the enactment of the 1991 Civil Rights Act have almost unanimously denied jury trials in Title VII cases. The 1991 Civil Rights Act, however, specifically provides for jury trials in Title VII cases. At issue is whether this provision applies retroactively to cases that were pending while the 1991 Civil Rights Act was passed and enacted into law.[3]

### A. *Case Law Prior to the Civil Rights Act of 1991*

Prior to the enactment of the 1991 Civil Rights Act, compensatory and punitive damages were not allowed in Title VII cases. Congress specified that upon a finding of unlawful discrimination,

> the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief the court deems appropriate.

42 U.S.C. § 2000e–5(g).

Courts have construed this section to bar compensatory and punitive relief and accordingly have limited Title VII relief to reinstatement and back pay. *See, e.g., Eastman v. Virginia Polytechnic Inst.*

*and State Univ.,* 939 F.2d 204, 208 (4th Cir.1991); *Swanson v. Elmhurst Chrysler Plymouth, Inc.,* 882 F.2d 1235, 1237 (7th Cir.1989), *cert. denied,* 493 U.S. 1036, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990); *Bennett v. Corroon & Black Corp.,* 845 F.2d 104, 106 (5th Cir.1988), *cert. denied,* 489 U.S. 1020, 109 S.Ct. 1140, 103 L.Ed.2d 201 (1989).

The right to a jury trial is established by examining the "procedural and remedial sections of the statute creating the right." *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 392 (3d Cir.1988), *cert. denied,* —— U.S. ——, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990) (citing *Tull v. United States,* 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835–36, 95 L.Ed.2d 365 (1987) and *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978)). Where the "particular remedial section in the statute provides for only equitable remedies then no right to a jury trial exists." *Cox,* 861 F.2d at 392 (citations omitted).

In deciding whether a statute provides for a jury trial, courts are to examine the statute's legislative history to determine whether Congress contemplated a jury trial. *Id.* at 393; *Garcia v. PPG Indus., Inc.,* 139 F.R.D. 63, 64 (D.N.J.1991). If no legislative intent favoring a jury trial is found, courts are to examine whether the Seventh Amendment provides for a jury trial. *Cox,* 861 F.2d at 393; *Garcia,* at 64.

The courts of appeals which have examined the statutory framework of Title VII prior to the 1991 Civil Rights Act have been almost unanimous in concluding that Title VII does not afford plaintiffs a right to a jury trial. *See, e.g., Ramos v. Roche Products, Inc.,* 936 F.2d 43, 49–50 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991); *Skinner v. Total Petroleum, Inc.,* 859 F.2d 1439, 1443–44 (10th Cir.1988); *Wade v. Orange County Sheriff's Office,* 844 F.2d 951, 953 (2d Cir.1988); *Yatvin v. Madison Metro. School Dist.,* 840 F.2d 412, 418 (7th Cir.

---

randum in Support of Plaintiff's Motion for "Jury" Trial and "Compensatory Damages."

**3.** Although the issue is not before the court, the same rationale and holding would apply to

cases instituted after the enactment of the 1991 Civil Rights Act based on conduct that occurred prior to its enactment.

1988); *Davis v. West Community Hosp.*, 786 F.2d 677, 683 (5th Cir.), *reh'g denied*, 790 F.2d 890 (5th Cir.1986); *see also Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 374–75, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979).[4]

The Third Circuit has also declined to afford a jury trial to Title VII plaintiffs. *See, e.g., Hayes v. Community Gen. Osteopathic Hosp.*, 940 F.2d 54, 57 (3d Cir. 1991), *cert. denied*, — U.S. —, 112 S.Ct. 940, 117 L.Ed.2d 110 (1992) (jury acted in advisory capacity only); *Andrews v. Philadelphia*, 895 F.2d 1469, 1471 (3d Cir.1990) (section 1983 claim tried to jury; Title VII claim tried to bench); *Roebuck v. Drexel Univ.*, 852 F.2d 715, 737 n. 40 (3d Cir.1988) ("[T]he courts have declined to grant parties a right to a jury trial primarily because Title VII affords equitable rather than legal relief.") (citations omitted); *Molthan v. Temple Univ.*, 778 F.2d 955, 960 (3d Cir. 1985) (plaintiff entitled to jury trial on section 1983 claims only and not for Title VII claims).

The Supreme Court has not expressed a view on whether a Title VII plaintiff is entitled to a jury trial. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 572, 110 S.Ct. 1339, 1348, 108 L.Ed.2d 519 (1990) ("The Court has never held that a plaintiff seeking backpay under Title VII has a right to a jury trial"); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 549 n. 1, 110 S.Ct. 1331, 1335 n. 1, 108 L.Ed.2d 504 (1990) (holding in dicta that "[t]his Court has not ruled on the question whether a plaintiff seeking relief under Title VII has a right to a jury"); *Patterson v. McLean Credit Union*, 491 U.S. 164, 211, 109 S.Ct. 2363, 2391, 105 L.Ed.2d 132 (1989), *superseded by* 1991 Civil Rights Act (noting that section 1981 claims provide for a

jury trial while Title VII claims do not) (Brennan, J., concurring in part and dissenting in part); *Lorillard*, 434 U.S. at 583–84, 98 S.Ct. at 872 ("We, of course intimate no view as to whether a jury trial is available under Title VII as a matter of either statutory or constitutional right."); *Curtis v. Loether*, 415 U.S. 189, 196–97, 94 S.Ct. 1005, 1009–10, 39 L.Ed.2d 260 (1974) (generally discussing lack of jury trials in Title VII cases heard by the courts of appeals); *see also Lehman v. Nakshian*, 453 U.S. 156, 164, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981) (noting in dictum the absence of jury trials in Title VII actions); *Novotny*, 442 U.S. at 375, 99 S.Ct. at 2350 (same); *see also Garcia*, 139 F.R.D. at 66.

Courts which have rejected jury trial rights for Title VII cases focus on whether the text of the statute contemplated equitable relief or legal relief. In *Cox*, for example, the Third Circuit searched the statute at issue and, finding references only to "equitable relief" and not to "legal relief" in the statute, declined to find a jury trial right existed. 861 F.2d at 393.

The Supreme Court has relied on the same analysis in determining whether a statute provides for a jury trial right. In *Lorillard*, the Supreme Court considered whether the Age Discrimination in Employment Act, § 29 U.S.C. § 621, *et seq.* (the "ADEA"), allowed for a jury trial. 434 U.S. at 577, 98 S.Ct. at 868. The Supreme Court analyzed the statute and determined that it specifically "empowers a court to grant 'legal or equitable relief.'" *Id.* at 583, 98 S.Ct. at 871.[5] Accordingly, the court reasoned:

> The word "legal" is a term of art: In cases in which legal relief is available and legal rights are determined, the Sev-

---

**4.** The Supreme Court in *Novotny* had observed:

"The Act [Title VII] provides for injunctive relief, specifically including backpay relief. The majority of the federal courts have held that the Act does not allow a court to award general or punitive damages. The Act expressly allows the prevailing party to recover his attorney's fees, and, in some cases, provides that a district court may appoint counsel for a plaintiff. Because the Act expressly authorizes only equitable remedies, the courts

have consistently held that neither party has a right to a jury trial."
442 U.S. at 374–75, 99 S.Ct. at 2350.

**5.** ADEA's remedial provision provides, in relevant part:

Any person aggrieved may bring a civil action in any court of competent jurisdiction for such *legal or equitable relief* as will effectuate the purposes of this chapter....
29 U.S.C. § 626(c) (emphasis added).

enth Amendment provides a right to jury trial.

We can infer, therefore, that by providing specifically for "legal" relief, Congress knew the significance of the term "legal," and intended there would be a jury trial on demand....

*Id.* at 583, 98 S.Ct. at 871.

As for "legal relief" under Title VII, the *Lorillard* Court stated: "[W]e note that Congress specifically provided for both 'legal or equitable relief' in the ADEA, but did not authorize 'legal' relief in so many words under Title VII." 434 U.S. at 584, 98 S.Ct. at 872.

The Supreme Court has held that back pay is most accurately characterized as equitable in nature. *See Terry,* 494 U.S. at 572-73, 110 S.Ct. at 1348-49 (acknowledging back pay under Title VII is generally characterized as equitable relief); *Curtis,* 415 U.S. at 197, 94 S.Ct. at 1010 (noting restitutionary nature of back pay); *Lorillard,* 434 U.S. at 584, 98 S.Ct. at 872 (stating that under Title VII, availability of back pay is a matter of equitable discretion); *see also Albemarle Paper Co. v. Moody,* 422 U.S. 405, 443, 95 S.Ct. 2362, 2385, 45 L.Ed.2d 280 (1975) (Rehnquist, J., concurring) ("The nature of the [Title VII] jurisdiction which the court exercises is equitable, and under our cases neither party may demand a jury trial."). Accordingly, under case law prior to the 1991 Civil

Rights Act, Tyree would not be entitled to a jury trial.[6]

B. *The Civil Rights Act of 1991*

Section 102(c) of the 1991 Civil Rights Act adds 42 U.S.C. § 1981a which provides:

(a) Right of Recovery.—

(1) Civil Rights.—In an action brought by a complaining party under [Title VII] against a respondent who engaged in unlawful intentional discrimination ... the complaining party may recover compensatory damages....

.    .    .    .    .

(c) Jury Trial. If a complaining party seeks compensatory or punitive damages under this section—

(1) any party may demand a trial by jury....

Civil Rights Act of 1991 § 102(c), 105 Stat. 1071.

Section 402 of the 1991 Civil Rights Act, entitled "Effective Date," provides: "Except as otherwise specifically provided, this Act and the amendments made by this Act *shall take effect upon enactment.*" Civil Rights Act of 1991, § 402, 105 Stat. 1071 (emphasis added).[7]

The task here is to determine whether the phrase, "shall take effect upon enactment," contemplates retroactive application of the 1991 Civil Rights Act to pending cases.[8]

---

**6.** To date, only two courts have afforded Title VII plaintiffs a right to a jury trial under case law prior to passage of the 1991 Civil Rights Act. As the *Garcia* court noted:

> The district court in *Beesley v. Hartford Fire Ins. Co.,* 723 F.Supp. 635 (N.D.Ala.1989), held that the Seventh Amendment guarantees a jury trial when an employee seeks under Title VII lost wages or monetary compensation as a result of employment discrimination. *Id.* at 652. The court reasoned that back pay constitutes a form of compensatory or "legal" damages; therefore, an employee requesting recovery of backpay is entitled to a jury trial under Title VII. *Id.* at 643–46; *accord Walton v. Cowin Equipment Co.,* 733 F.Supp. 327 (N.D.Ala.1990), *rev'd mem., vacated* 930 F.2d 924 (11th Cir.1991), *cert. denied* — U.S. ——, 112 S.Ct. 86, 116 L.Ed.2d 58 (1991). In *Jenouri v. WAPA–TV Pegasus Broadcasting, Inc.,* 747 F.Supp. 118 (D.P.R.1990), the district court relied on the holding in *Beesley* and

granted a jury trial to a Title VII plaintiff seeking compensatory damages.

*Garcia,* 139 F.R.D. at 67.

**7.** The Senate passed S. 1745 on 30 October 1991 and the House of Representatives passed this Senate version of the 1991 Civil Rights Act on 7 November 1991. On 21 November 1991, President Bush signed the 1991 Civil Rights Act into law.

**8.** Immediately after the 1991 Civil Rights Act was signed into law, various groups questioned whether it would apply retroactively to pending cases or even to potentially discriminatory actions which occurred prior to the enactment of the 1991 Civil Rights Act and for which an action was not filed until after the 1991 Civil Rights Act was enacted. *See, e.g., Retroactivity is Major Issue as EEOC Gears Up to Implement Rights Bill,* Daily Report for Executives (BNA) No. 227, (25 November 1991); *Employers's*

## C. Case Law on Retroactive Application of Laws

The Supreme Court has both upheld and denied the retroactive application of new legislation depending on the canon of construction it chose to follow. In *United States v. Schooner Peggy*, 1 Cranch 103, 2 L.Ed. 49 (1801), the Supreme Court first enunciated the principle that a court is to apply the law in effect at the time it renders a decision. 1 Cranch at 110.[9] In *Schooner Peggy*, the Court considered whether a French vessel, seized by an American ship, could be condemned. The Circuit Court held condemnation was proper. Prior to a decision by the Supreme Court, however, the United States entered into a convention with France providing for the restoration of all French "[p]roperty captured, and not yet *definitively* condemned...." *Id.* 1 Cranch at 107 (emphasis in original). Because the law had changed while the case was on appeal to the Supreme Court, the Court held application of the new law was proper. According to the Court, the phrase "and not yet *definitively* condemned" required application of the convention to all cases pending before an appellate court where a law intervenes and positively changes the rule that governs. *Id.* 1 Cranch at 109.

Subsequent Supreme Court decisions also favored the opposite proposition that laws should not be retroactively applied. In *Union Pac. R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 34 S.Ct. 101, 58 L.Ed. 179 (1913), the Supreme Court considered the retroactive application of a Wyoming statute of limitations to adverse possession of land under the Land Grant Act of 1 July 1862. The Court held:

[T]he first rule of construction is that *legislation must be considered as addressed to the future*, not to the past ... [a] retrospective operation will not be given to a statute which interferes with antecedent rights ... *unless such be the 'unequivocal* and inflexible import of the terms, and the *manifest intention of the legislature.'*

231 U.S. at 199, 34 S.Ct. at 102 (quoting *United States v. Heth*, 3 Cranch 399, 413, 2 L.Ed. 479 (1806) (emphasis added); *see also United States Fidelity & Guar. Co. v. United States*, 209 U.S. 306, 314, 28 S.Ct. 537, 539, 52 L.Ed. 804 (1908) ("The presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible of any other."); *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 841, 110 S.Ct. 1570, 1579, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring) (citing numerous early Supreme Court decisions denying retroactive application of new legislation).

The Supreme Court, however, continued to vacillate on the issue of retroactive application of laws. Opinions of the Court during the nineteenth century and most of the twentieth century have largely applied the principle favoring prospective application of legislation unless Congress specified otherwise. *Kaiser*, 494 U.S. at 842, 110 S.Ct. at 1579 (Scalia, J., concurring).

Beginning in 1969, however, the Supreme Court started to develop a line of decisions favoring retroactive application of legislation in certain instances. *Id.* at 844, 110 S.Ct. at 1580. In *Thorpe v. Housing Auth. of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), the Court was faced

---

Group Urges EEOC to Enforce Omnibus Civil Rights Law Prospectively, Daily Report for Executives (BNA) No. 225, at A–27 (21 November 1991).

9. The Supreme Court in *Schooner Peggy* stated:
   [T]he province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional ... I know of no court which can contest its obligation. It is true that in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns ... the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside.
   *Schooner Peggy*, 1 Cranch at 110.

with a regulation, promulgated after a tenant was evicted from low-income housing, which required local housing authorities to inform a tenant of the reasons for an eviction prior to instituting eviction proceedings. *Id.* at 272, 89 S.Ct. at 520. Citing *Schooner Peggy*, the Court held that the regulation should be retroactively applied to govern the eviction proceedings which occurred eighteen months prior to the promulgation of the new regulation. *Id.* at 271–81, 89 S.Ct. at 520–26.

Questions remained on how retroactivity was to operate; the Supreme Court stated in *Bradley v. Richmond School Board*, 416 U.S. 696, 712–13, 94 S.Ct. 2006, 2016–17, 40 L.Ed.2d 476 (1974):

> In the wake of *Schooner Peggy*, however, it remained unclear whether a change in the law occurring while a case was pending on appeal was to be given effect only where, by its terms, the law was to apply to pending cases, as was true of the convention under consideration in *Schooner Peggy* or, conversely, whether such a change in the law must be given effect *unless* there was clear indication that it was *not* to apply in pending cases. For a very long time the Court's decisions did little to clarify this issue.

416 U.S. at 712–13, 94 S.Ct. at 2016–17 (footnote omitted). The *Bradley* Court sought to clarify this ambiguity. It interpreted *Thorpe* broadly and rejected the "contention that a change in the law is to be given effect in a pending case only where that is the clear and stated intention of the legislature." 416 U.S. at 715, 94 S.Ct. at 2018.[10]

*Bradley* also broadened the scope of the *Schooner Peggy* and *Thorpe* holdings. Whereas the *Thorpe* Court construed *Schooner Peggy* to hold that an *"appellate court* must apply the law in effect at the time it renders its decisions[,]" 393 U.S. at 281, 89 S.Ct. at 526 (emphasis added), the *Bradley* formulation contemplates the broader scheme that a change in the law is to be given effect *in a pending case*, 416 U.S. at 711–16, 94 S.Ct. at 2016–18. Thus, whereas, "[t]he *Thorpe* formulation ... suggests that the rule of retroactivity applies only when the law has been changed between the initial and the appellate decision[,] [t]he *Bradley* formulation more naturally suggests that all judicial decisions must apply current law, no matter when the change occurred." *Kaiser*, 494 U.S. at 849, 110 S.Ct. at 1583 (Scalia, J., concurring).

The *Bradley* Court elaborated on the exception to the *Schooner Peggy* rule: A court is to apply a law in effect at the time it renders its decision unless manifest injustice results. 416 U.S. at 717, 94 S.Ct. at 2019. To determine the risk of manifest injustice, courts consider: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Id.*

Parallel to the line of decisions upholding retroactivity was the development of opinions holding that legislation should be applied prospectively only. Preceding *Thorpe* by several years was the Supreme Court's decision in *Greene v. United States*, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964). Citing *Laramie Stock Yards* for the proposition that legislation is only to apply prospectively, the *Greene* Court decided against retroactive application of a regulation issued by the Secretary of Defense. 376 U.S. at 160, 84 S.Ct. at 621.

Similarly, in *United States v. Security Indus. Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), the Supreme Court observed: "The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." 459 U.S. at 79–80, 103 S.Ct. at 413. *Security Indus. Bank* concerned the retroactive effect of a provision in bankruptcy law which permitted individual debtors to avoid liens on certain property. *Id.* at 71, 103 S.Ct. at 409. In the

---

**10.** The *Bradley* Court read *Thorpe* to stand for the proposition "that even where the intervening law does not explicitly recite that is to be applied to pending cases, it is to be given recognition and effect." 416 U.S. at 715, 94 S.Ct. at 2018.

absence of clear congressional intent that the provision was to apply retroactively, the Court declined to apply the provision retroactively. *Id.* at 80, 103 S.Ct. at 413. In *Bennett v. New Jersey,* 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), the Court relied on the same analysis of legislative intent to deny retroactive effect to amendments to Title I of the Elementary and Secondary Education Act of 1965, which provided grants to support compensatory education for disadvantaged children in low income areas. *Id.* at 641–45, 105 S.Ct. at 1561–63.

Recently, in *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Supreme Court reached a similar result. In discussing whether the Administrative Procedures Act allows for retroactive rulemaking by the Secretary of Health and Human Services, the Court held retroactivity is not favored in the law: "[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* at 208, 109 S.Ct. at 2389.

Matching the Supreme Court scheme, Courts of Appeals have similarly adopted variant approaches to retroactive legislation. *See Kaiser,* 494 U.S. at 841, 110 S.Ct. at 1579 (Scalia, J., concurring) (comparing *Davis v. Omitowoju,* 883 F.2d 1155, 1170–1171 (3d Cir.1989) (denying retroactive application of Virgin Islands legislation which capped medical malpractice verdicts) and *Anderson v. US AIR, Inc.,* 818 F.2d 49, 53 (D.C.Cir.1987) (denying retroactive application of amendment to Federal Aviation Act) with *United States v. R.W. Meyer, Inc.,* 889 F.2d 1497, 1505–1506 (6th Cir.1989) (affirming retroactivity of Superfund Amendments and Reauthorization Act which amended the Comprehensive Environmental Response Compensation and Liability Act) and *United States v. Marengo County Comm'n,* 731 F.2d 1546, 1553–1555 (11th Cir.), *appeal dismissed,* 469 U.S. 976, 105

S.Ct. 375, 83 L.Ed.2d 311 (1984) (upholding retroactivity of amendment to Voting Rights Act)).

The reliance on different canons has led to what the Supreme Court has recently characterized as an "apparent tension" in its holdings on retroactivity. *Kaiser,* 494 U.S. at 837, 110 S.Ct. at 1577. Justice Scalia, in his concurrence with the *Kaiser* opinion, characterized the Supreme Court case law on retroactivity as being "in irreconcilable contradiction." *Id.* at 841, 110 S.Ct. at 1579 (Scalia, J., concurring).

The Supreme Court in *Kaiser* was presented with the opportunity to reconcile the conflicting lines of precedent on retroactivity. The *Kaiser* Court, however, declined to do so: "We need not in this case, however, reconcile the two lines of precedent represented by *Bradley* ... and *Georgetown* ..., because under either view, where the congressional intent is clear, it governs." *Id.* at 837, 110 S.Ct. at 1577.[11]

The Third Circuit has not taken a definitive position on the two lines of cases. In *Davis,* the Third Circuit held that the district court did not err in denying application of an amended statute which set a cap on the amount of damages in medical malpractice verdicts. 883 F.2d at 1170–71. The *Davis* court followed the Supreme Court's decision in *Security Indus. Bank* which supported the prospective application of statutes. *Id.* at 1170. The court stated "this rule 'has generally been applied only when application of the new law would affect rights or obligations existing prior to the change in law.'" *Id.* at 1170 (quoting *Bonjorno v. Kaiser Aluminum & Chem. Corp.,* 865 F.2d 566 (3d Cir.1989), *rev'd in part aff'd in part,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990)).

The Third Circuit has also followed the *Bradley* line of cases. In *United States v. Jacobs,* 919 F.2d 10 (3d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1333, 113

**11.** The *Kaiser* Court cited *Bradley* for the proposition that "an intervening statute applies retroactively unless a contrary intention appears." 494 U.S. at 837, 110 S.Ct. at 1577 (citing *Bradley,* 416 U.S. at 716–17, 94 S.Ct. at 2018–19). The

Court also cited *Georgetown Hosp.* for the proposition that a "statute does not apply retroactively unless its language requires it." *Id.,* at 837–38, 110 S.Ct. at 1577 (citing *Georgetown Hosp.,* 488 U.S. at 208, 109 S.Ct. at 471).

L.Ed.2d 265 (1991), at the time the defendant committed her offense it was classified as a Class B felony. *Id.* at 11. At the time of her sentencing, however, her offense was classified as a Class C felony because of an amendment to 18 U.S.C. § 3359(a) prior to her sentencing. The district court found that her offense was a Class C felony and sentenced her accordingly. As a result, the defendant was ineligible for probation. *Id.* Although the Third Circuit cited the *Bradley* rule to apply laws retroactively, it relied on the general saving statute 1 U.S.C. § 9 to apply the classification amendment retroactively. *Id.,* at 11–12.

In *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,* 898 F.2d 914 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990), the plaintiff brought an action for false representation of a product. *Id.* at 921. At the time the plaintiff instituted the suit, the Lanham Act, 15 U.S.C. § 1051, *et seq.,* proscripted misrepresentations by the defendant about its own product. Subsequently, this statute was amended to encompass misrepresentations made by a defendant about its own product or the product of another. *Id.* The Third Circuit applied the amended version to the plaintiff's complaint. Citing *Bradley* it noted: "Having considered the parties, the nature of their rights and the impact on those rights of this change in law, we perceive no threat of manifest injustice and shall apply the provision as it now is written." *Id.* at 922 n. 9 (citation omitted).

In *Air–Shields, Inc. v. Fullam,* 891 F.2d 63 (3d Cir.1989), the Third Circuit retroactively applied amendments in the federal statute governing removal. *Id.* at 65. Although the Third Circuit relied on *Bradley,* it did not discuss why or whether a manifest injustice would not result from the retroactive application.

Although the Third Circuit continues to apply *Bradley,* it appears that if "application of the new law would effect rights and obligations existing prior to the change in law," it would decline to apply the new law retroactively. *Davis,* 883 F.2d at 1170. This trend appears to correspond with the manifest injustice exception; if a new law effects a party's rights and obligations, arguably a manifest injustice would result from retroactive application.

D. *Compensatory Damages and Jury Trial Provisions of the 1991 Civil Rights Act*

In construing the phrase, "shall take effect upon enactment," the *Kaiser* decision prompts reference to legislative intent.[12] Where the legislative intent is clear on whether a statute was meant to apply retroactively, a decision easily follows. Where, however, the legislative history is silent or ambiguous, the court's task is more difficult. In such cases, courts are faced with the task of choosing between the two lines of Supreme Court precedent on retroactivity to arrive at a just and fair result.

1. Legislative History

■ The legislative history of a statute is particularly difficult to construe when conflicting statements regarding the interpretation of a statute are presented by congressional members.[13] On the issue of

---

**12.** Of course, if the words of the statute are clear, reference to legislative history is not necessary.

**13.** Resort to legislative history to decipher ambiguous statutes is now axiomatic. *See Oklahoma v. New Mexico,* —— U.S. ——, 111 S.Ct. 2281, 2289 n. 5, 115 L.Ed.2d 207, *reh'g denied,* —— U.S. ——, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991) (the Supreme Court has "repeatedly ... looked to legislative history and other extrinsic material when required to interpret a statute which is ambiguous") (citations omitted). *But see Blanchard v. Bergerson,* 489 U.S.

87, 99, 109 S.Ct. 939, 947, 103 L.Ed.2d 67 (1989) ("It is neither compatible with our judicial responsibility of assuring reasoned, consistent, and effective application of the statutes ..., nor conducive to a genuine effectuation of congressional intent, to give legislative force to each snippet of analysis....") (Scalia, J., concurring).

A statement of a legislative sponsor is "an authoritative guide to the statute's construction." *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 527, 102 S.Ct. 1912, 1921, 72 L.Ed.2d 299 (1982). General remarks by legislators,

whether the 1991 Civil Rights Act is to apply retroactively, varying interpretations, as set out below, have been advanced.

When initially passed by the Senate on 30 October 1991, section 402 of the 1992 Civil Rights Act, the provision governing the effective date, merely stated:

> Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment.

137 Cong.Rec. S15512 (daily ed. 30 October 1991). Prior to the vote by the House of Representatives, the Senate reconvened on 5 November 1991 to consider Senate Resolution 214 sponsored by Senator Robert Dole. Senate Resolution 214 was passed.

Part of Senate Resolution 214 involved an amendment proposed by Senator Frank Murkowski (the "Murkowski Amendment"). The Murkowski Amendment made technical corrections to an enlargement of S. 1745, the version of the 1991 Civil Rights Act passed by the Senate on 30 October 1991. 137 Cong.Rec. S15950 (daily ed. 30 October 1991).

Among various technical changes, the Murkowski Amendment modified section 402 of the 1991 Civil Rights Act specifically to preclude the 1991 Civil Rights Act from applying retroactively to the *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), *amended by* 1991 Civil Rights Act, litigation.[14] The Murkowski Amendment added subsection (b) to section 402. The enacted version of section 402 thus provides:

> (a) IN GENERAL.—Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment.

> (b) CERTAIN DISPARATE IMPACT CASES.—Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975 and for which an initial decision was rendered after October 30, 1983.

137 Cong.Rec. S15964 (daily ed. 5 November 1991).

The legislative history on retroactivity is mixed. Senator John C. Danforth, one of the co-sponsors of the 1991 Civil Rights Act, contended that the 1991 Civil Rights Act should not be retroactively applied:

> Wards Cove has been litigating this case for almost a generation, having spent 20 years and almost $2 million to prove itself innocent. Although there have been eight court decisions and no court has found Wards Cove guilty of employment discrimination, the plaintiffs' attorney has now filed yet another appeal seeking his ninth decision. The plaintiffs['] attorney is arguing that Congress is changing the law and the case should be relitigated. After being found innocent under both the *Griggs* standard and on remand from the Supreme Court decision, Wards Cove would like to decline the honor of being the first case to litigate whether Congress has changed the law.
>
> If the court finds Congress has actually changed the legal standards, it is fundamentally unfair to judge 1971 employment practices by standards first created in 1991.
>
> And if Wards Cove is found guilty under the new standards, it would find itself in the curious position of being innocent under the *Griggs* standard but being guilty under the new standard the court says Congress actually enacted.

137 Cong. Rec. S15963 (daily ed. 5 November 1991).

---

however, have little effect on the determination of congressional intent. *Id.*

14. In discussing Senate Resolution 214, Senator Murkowski provided the following rationale for the amendment to section 402:

> On January 29, 1991, the District Court issued the eighth decision in the now famous *Wards Cove* case finding "the defendants hired individuals for the at-issue jobs based upon their qualifications, and not upon their race.... [T]he plaintiffs have failed to establish disparate impact in any of the defendants' hiring practices ... and have also failed to establish that the defendants' housing and messing practices have a disparate impact."
>
> The *Wards Cove* case, which began in 1971, was first decided under the *Griggs v. Duke Power Company* standard. When the District Court and the 9th Circuit Court of Appeals first decided the case, the prevailing law was *Griggs*. Neither court found *Wards Cove* guilty....
>
> When deciding the case under *Griggs,* both the District Court and the Ninth Circuit said Wards Cove had the full burden of proof. Even with the complete burden of proof, Wards Cove was found innocent.

My review of Supreme Court case law supports my reading that in the absence of an explicit provision to the contrary, no new legislation is applied retroactively. Rather, new statutes are to be given prospective application only, unless Congress explicitly directs otherwise, which we have not done in this instance. Support for this proposition is derived from Justice Scalia's concurring opinion in *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* [494 U.S. 827], 110 S.Ct. 1570, 1579 [108 L.Ed.2d 842] (1990), and the unanimous opinion of the Supreme Court in *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208 [109 S.Ct. 468, 471, 102 L.Ed.2d 493] (1988), and the numerous cases cited by Justice Kennedy in Bowen.

I acknowledge that there appear to be two cases that do not adhere to this principle but instead support retroactive application of new statutes in the absence of "manifest injustice." *Bradley v. Richmond School Board,* 416 U.S. 696 [94 S.Ct. 2006, 40 L.Ed.2d 476] (1974); *Thorpe v. Housing Authority of Durham,* 393 U.S. 268 [89 S.Ct. 518, 21 L.Ed.2d 474] (1969). The sponsors disapprove of these cases.

Our intention in drafting the effective date provision was to adhere to the principle followed by the vast majority of Supreme Court cases and exemplified by Bowen and Justice Scalia's concurrence in Bonjorno.

Subsection 22(b), regarding certain disparate impact cases, is intended only to provide additional assurance that the provisions of the bill will not be applied to certain cases that fit the provisions of that subsection. It should not be read in derogation of the sponsors' intention not to provide for retroactive effect or application as expressed in subsection 22(a) of the bill.

137 Cong.Rec. S15483 (daily ed. 30 October 1991).

Senator Danforth's interpretative memorandum was signed by himself, William S. Cohen, Mark O. Hatfield, Arlen Specter, John H. Chafee, David Durenberger and James M. Jeffords. *Id.* at S15485. Senator Dole, although not a sponsor of the bill, made similar statements opposing retroactivity on 30 October 1991, *see id.* at S15478, and 5 November 1991, *see* 137 Cong.Rec. S15953 (daily ed. 5 November 1991).[15]

---

**15.** On 30 October 1991, Senator Dole stated:

Section 22 specifies that the act and the amendments made by the Act take effect upon enactment. Accordingly, they will not apply to cases arising before the effective date of the Act. At the request of the Senators from Alaska, section 22(b) specifically points out that nothing in the Act will apply retroactively to the Wards Cove Packing Company, an Alaska company that spent 24 years defending against a disparate impact challenge.

137 Cong. Rec. S15478 (daily ed. 30 October 1991) (citations omitted). According to Senator Dole, the submitted interpretation represented the view of the "administration, myself, and Senators Burns, Cochran, Garn, Gorton, Grassley, Hatch, Mack, McCain, McConnell, Murkowski, Simpson, Seymour, and Thurmond." 137 Cong. Rec. S15472 (daily ed. 30 October 1991). On 5 November 1991 Senator Dole read the legislative history for the Murkowski Amendment into the record:

Section 402 of the Act, and this amendment to section 402, specify that the Act and the amendments made by the Act take effect on the date of enactment. Accordingly, they will not apply to cases arising before the effective date of the Act. See *Bowen v. Georgetown*

*University Hospital,* 488 U.S. 204 [109 S.Ct. 468, 102 L.Ed.2d 493] (1988); *cf. Kaiser Aluminum & Chemical Corp. v. Bonjorno* [494 U.S. 827], 110 S.Ct. 1570 [108 L.Ed.2d 842] (1990) (declining to resolve conflict between *Georgetown University Hospital* and *Bradley v. Richmond School Board,* 416 U.S. 696 [94 S.Ct. 2006, 40 L.Ed.2d 476] (1974)). This amendment specifically points out that nothing in the Act will apply retroactively to the well known case involving the Wards Cove Packing Company, an Alaska company that spent 24 years defending against a disparate impact challenge.

Absolutely no inference is intended or should be drawn from the language of this amendment to section 402 that the provisions of the Act or the amendments it makes may otherwise apply retroactively to conduct occurring before the date of enactment of this Act. Such retroactive application of the Act and its amendments is not intended; on the contrary, the intention of this amendment to section 402 is simply to honor a commitment to eliminate every shadow of a doubt as to any possibility of retroactive application to the case involving the Wards Cove Company.

Not only would *retroactive application* of the Act and its amendments to conduct occur-

Senator Ted Kennedy, a sponsor of the 1991 Civil Rights Act, also made remarks at both the 30 October 1991 and 5 November 1991 sessions. On 30 October 1991, Senator Kennedy stated he favored the retroactive application of the 1991 Civil Rights Act to pending cases:

I would like to state, however, my understanding with regard to the bill's effective date. Section 22 of the bill states that "[e]xcept as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." Section 22(b) provides that nothing in the act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.

It will be up to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment. Ordinarily, courts in such cases apply newly enacted procedures and remedies to pending cases. That was the Supreme Court's holding in *Bradley v. Richmond School Bd.*, 416 U.S. 696 [94 S.Ct. 2006, 40 L.Ed.2d 476] (1974).

137 Cong.Rec. S15485 (daily ed. 30 October 1991). On 5 November 1991, Senator Kennedy made similar remarks in reference to the amendment to section 402:

With the exception of the Murkowski amendment, this language will leave it to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment.

There is disagreement among the supporters of the bill regarding this issue. Courts frequently apply newly enacted procedures and remedies to pending cases. That was the Supreme Court's holding in *Bradley v. Richmond School Bd.*, 416 U.S. 696 [94 S.Ct. 2006, 40

L.Ed.2d 476] (1974), and *Thorpe v. Housing Authority*, 393 U.S. 268 [89 S.Ct. 518, 21 L.Ed.2d 474] (1969), in which the Court stated: "The general rule ... is that an appellate court must apply the law in effect at the time it renders its decision."

And where a new rule is merely a restoration of a prior rule that had been changed by the courts, the newly restored rule is often applied retroactively, as was the case with the Civil Rights Restoration Act of 1988.

Many of the provisions of the Civil Rights Act of 1991 are intended to correct erroneous Supreme Court decisions and to restore the law to where it was prior to those decisions. In my view, these restorations apply to pending cases, which is why the supporters of the Murkowski amendment sought specific language to prevent the restorations from applying to that particular case. In fact, the adoption of the Murkowski amendment makes it more likely that the restorations in the act will apply to all cases except the Wards Cove case itself. Ironically, the defeat of the Murkowski amendment would make it more likely the courts would not apply the restorations to any pending cases, including the Wards Cove case.

[The] Murkowski amendment was omitted from the final version of the Civil Rights Act because of a clerical error, and it would be a serious mistake for the Senate to go back on a compromise that was accepted in good faith.

137 Cong.Rec. S15963 (daily ed. 5 November 1991).

The statements made in the debate by members of the House of Representatives also evidence different views on retroactivity. Representative Henry Hyde spoke out against retroactive application. *See* 137

---

ring before the date of enactment be contrary to the language of section 402 and this amendment, but it *would be extremely unfair.* For example, *defendants in pending litigation should not be made subject to awards of money damages of a kind and an amount that they could not possibly have anticipated prior to the time suit was brought against them.*

.... The language of section 402, and this amendment to section 402, is designed to make certain that the courts not apply the provisions of the Act or its amendments to conduct occurring before the date of enactment.

137 Cong. Rec. S15953 (daily ed. 5 November 1991) (emphasis added).

Cong.Rec. H9512 (daily ed. 7 November 1991).[16] Representative Mickey Edwards spoke in support of the retroactive effect of the 1991 Civil Rights Act. *See id.* at H9530–31.[17]

If legislative history is nonconclusive, it appears courts should refer to additional information to decide which interpretation is better. *See Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 164, 109 S.Ct. 439, 447, 102 L.Ed.2d 445 (1988). In *Beech Aircraft,* the Supreme Court encountered legislative history which took "diametrically opposite positions" on the interpretation of Fed.R.Evi. 803(8)(C). *Id.* at 164, 109 S.Ct. at 447. To resolve a dispute over the proper interpretation of the rule, the Supreme Court looked to comments made by the Advisory Committee and the text of the Rule itself to determine the better legislative interpretation. *Id.* at 165, 109 S.Ct. at 447.[18]

**2. Policy Statement of the Equal Employment Opportunity Commission**

On 27 December 1991 the Equal Employment Opportunity Commission (the "EEOC") issued a policy statement (the "EEOC Policy Statement") with respect to the retroactive application of the 1991 Civil Rights Act compensatory damages provision. The EEOC stated: "[T]he damages provisions ... are to be considered as a remedy in all cases involving intentional discriminatory conduct that occurred on or after the Act's effective date...." EEOC Notice, No. 915.002, dated 27 December 1991, at 1.

16. Representative Hyde said:

Mr. Speaker, apropos of the Wards Cove issue that has really irritated so many people here, I want to point out that section 402 of the bill we are about to deal with specifies that the act and the amendments made by the act take effect on the date of enactment. They have no application to pending cases or to cases arising before the effective date of the act. The act is prospective. It has nothing to do with Wards Cove.

137 Cong. Rec. H9512 (daily ed. 7 November 1991).

17. Representative Edwards said:

The bill states that it takes effect on the date of enactment. The intent of the sponsors is that this language be given its normal effect, and that the provisions of the bill be applied to pending cases except where the bill expressly provides otherwise.

.      .      .      .      .

Practical concerns, as well as those of elementary fairness, have led us to the conclusion that the application of the bill to pending cases is essential. Litigation under Title VII and § 1981 can take decades to resolve.... To have limited this legislation to conduct occurring after the date of enactment would have led to an intolerable result: For the next two decades, the courts would be handling down two sets of contradictory decisions: one set of decisions would explicate the law as Congress enacted it, and the other would further develop fine points of law under Wards Cove, Patterson, Lorance, Price Waterhouse, etc., long after Congress has repudiated those decisions. Confusion between the two lines of cases would be inevitable, and the protections enacted by this bill would become clouded even as to future conduct.

In addition, the nation cannot afford such an appalling waste of judicial resources.... [I]t would be senseless to condemn [courts] to pointless exercises such as the further development of already-overruled decisions.

137 Cong. Rec. H9530–31 (daily ed. 7 November 1991). Representative Fish, concurred with Representative Edwards remarks: "[W]ith respect to the effective date in section 402, I think that it should be made clear that the bill applies to pending cases." *Id.* at H9549.

18. The *Beech Aircraft* Court noted:

Turning next to the legislative history of Rule 803(8)(C), we find no clear answer to the question of how the Rule's language should be interpreted. Indeed, in this case the legislative history may well be at the origin of the dispute. Rather than the more usual situation where a court must attempt to glean meaning from ambiguous comments of legislators who did not focus directly on the problem at hand, here the Committees in both Houses of Congress clearly recognized and expressed their opinions on the precise question at issue. Unfortunately, however, they took diametrically opposite positions. Moreover, the two Houses made no effort to reconcile their views, either through changes in the Rule's language or through a statement in the Report of the Conference Committee.

. . . .

[The] legislative history reveals a difference of view between the Senate and the House that affords no definitive guide to the congressional understanding. It seems clear however that the Senate understanding is more in accord with the wording of the Rule and with comments of the Advisory Committee.

*Beech Aircraft,* 488 U.S. at 164–65, 109 S.Ct. at 447–48.

The EEOC recognized the inclusion of section 402(b), which provides:

(b) Certain Disparate Impact Cases. Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983[,]

creates an inference that all other provisions apply retroactively. *Id.* at 2. The EEOC further stated a similar inference could be drawn from section 109(c) which provides: "The amendments made by this section shall not apply with respect to conduct occurring before the date of the enactment of this Act." The EEOC concluded, however, this language does not require retroactive application. EEOC Policy Statement at 3.

After a detailed discussion of *Bradley* and *Georgetown*, the EEOC concluded *Georgetown* "represents the Supreme Court's more recent holding on this issue, and the Commission will follow the dictates of that case with regard to the retroactivity of the damages provisions. Accordingly, the Commission will not seek damages in charges filed prior to the enactment of the Act, or in post-Act charges that challenge pre-Act conduct." *Id.* at 7.

In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1983), *reh'g denied,* 468 U.S. 1227, 105 S.Ct. 28, 29, 82 L.Ed.2d 921 (1984), the Supreme Court addressed the issue of deference due to an agency interpretation of a statute. The Court stated two inquiries were necessary when a court reviews an agency's construction of a statute: first, whether the intent of Congress is clear; second, if not, whether the agency's interpretation is based on a permissible construction of the statute. *Id.* at 843, 104 S.Ct. at 2782.

In discussing the role of administrative agencies, the Court reiterated:

The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.

*Id.* (quoting *Morton v. Ruiz,* 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974)). Indeed, one function of federal agencies is to fill gaps in legislation left by Congress. *Id.* at 231–32, 94 S.Ct. at 1072–73. In light of the function of federal agencies, the Court has stated: "Considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer...." *Id.* at 232, 94 S.Ct. at 1073.

Although the EEOC Policy Statement is a policy statement, rather than a regulation, it is most likely indicative of the position that will be taken in any future regulations constructed under the 1991 Civil Rights Act. Accordingly, under *Chevron,* the EEOC Policy Statement is to be accorded great deference.

3. The Supreme Court's Two Lines of Precedents on the Retroactivity of the Civil Rights Act of 1991

In the instant case, resort to judicial precedent on whether to construe the 1991 Civil Rights Act retroactively is proper and helps provide a principled basis by which to adjudicate the disputes between the parties. Defaulting back to judicial precedents on the retroactivity of the 1991 Civil Rights Act is problematic, however, because of the two different lines of precedents advanced by the Supreme Court on the retroactivity issue. Recently, the Supreme Court in *Kaiser* discussed the "apparent tension" in its lines of cases concerning the retroactive application of legislation.

■ In *Kaiser,* the Supreme Court declined to decide which rule should prevail by looking to the legislative history of the statute at issue and determining that the legislative history conclusively answered the question of retroactivity. In this case, however, the statute is silent on retroactivity and the legislative history is ambiguous. A choice between the *Bradley* line and the *Georgetown* line of cases must be made. For the reasons explained below, the *Georgetown* line of cases which allows for

prospective application of legislation only is adopted.

The recent surge of cases deciding the issue of retroactive application of the 1991 Civil Rights Act with respect to jury trials and compensatory damages are split on whether to follow *Bradley* or *Georgetown.*

In *Van Meter v. Barr,* 778 F.Supp. 83 (D.D.C.1991), the court applied the *Georgetown* ruling and denied plaintiff's request to amend his complaint. The *Van Meter* court held the "right to seek compensatory damages in a jury trial against the United States is a major substantive provision." 778 F.Supp. at 84. The court held when substantive legislation is at issue it will not be given retroactive application absent unequivocal and inflexible statutory terms and the manifest intention of Congress. *Id.* (quoting *Alpo Pet Foods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 963 n. 6 (D.C.Cir.1990) and *Georgetown,* 821 F.2d 750, 758 (D.C.Cir.1987), *aff'd,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)). The court held that absent such conclusive support for retroactivity, the presumption against retroactive application is not overcome. *Id.* at 85.

The *Van Meter* court also observed the 1991 Civil Rights Act "indicate[s] that it will apply only prospectively...." *Id.* The court stated "complaining parties" as contained in section 102 is defined by subsection (d) as " 'the Equal Employment Opportunity Commission, the Attorney General, or *a person who may bring an action or proceeding under Title VII'*...." *Id.* at 85 (quoting section 102(d)). "By its terms, the statute seems to contemplate that only plaintiffs who have not yet brought their actions are entitled to invoke the new [1991 Civil Rights] Act." *Id.*

Lastly, the *Van Meter* court stated retroactive application as against the federal government could raise sovereign immunity issues.

[T]o allow Title VII plaintiffs simply to tack claims for compensatory damages onto complaints already pending in U.S. District Courts would, as a practical matter, deprive the United States of its opportunity to resolve claims for monetary damages at the administrative level, and would, as a legal matter, impermissibly broaden the jurisdiction of the federal courts to include claims that, contrary to the limited scope of the federal government's waiver of sovereign immunity in this area, had not followed the administrative track still required by Title VII as a prerequisite to judicial action in federal employment cases.

*Id.* at 85. In light of the lack of legislative history addressing these sovereign immunity concerns, the *Van Meter* court declined to "infer such a significant expansion." *Id.* at 86.

Recently, in *Khandelwal v. Compuadd Corp.,* 780 F.Supp. 1077 (E.D.Va.1992), the court followed the rationale advanced in *Van Meter* in rejecting retroactive application of the compensatory damages provision. The *Khandelwal* court declined to make a decision based upon the legislative history and adopted the *Georgetown* ruling as the better rule. *Id.* at 1080–81. The court reasoned: "The presumption against retroactive application best preserves the distinction between courts and legislatures: the former usually act retrospectively, settling disputes between persons, the latter usually act prospectively, setting the general rules for future conduct." *Id.* at 1081.

Although the *Khandelwal* court did not rely on this distinction, it noted the facts of *Bradley* were distinguishable from its facts. The court stated the statute at issue in *Bradley,* whether to apply an attorneys' fees statute retroactively, "created no additional source of liability and had no potential effect on a finding of liability." *Id.* at 1081 n. 5 The retroactive application of the jury trial provision and the compensatory damages provision, however, affects

both how liability is found and the amount of any liability.... [A] right to seek compensatory damages in a jury trial is a major substantive provision. With these new sanctions necessarily comes the requirement that courts consider different and dispositive issues, such as whether the plaintiff has suf-

891

fered injury entitling him to money damages. . . .

*Id.*

Other courts have denied retroactive application of section 102 either on the basis of unclear legislative intent or without explaining the court's rationale. *See, e.g., Hansel v. Public Serv. Co.*, 778 F.Supp. 1126 (D.Colo.1991) (The Court followed the direction of *Kaiser* and looked to the congressional intent. After a survey of the legislative history revealed the Senators sponsoring the bill as well as the members of the House of Representatives were divided on the issue, the *Hansel* court refused to apply the 1991 Civil Rights Act retroactively for lack of clear congressional intent to do the same.). *Id.* at 1136–1137; *Alexander v. AMP, Inc.*, 57 Fair Empl. Prac.Cas. (BNA) 768 (W.D.Pa. 5 Dec. 1991) (no statement explaining rationale for decision); *James v. American Int'l Recovery, Inc.*, No. 89–321, 1991 WL 281734, *1, 1991 U.S.Dist. LEXIS 18408, *1 (N.D.Ga. 3 Dec. 1991) (1991 Civil Rights Act does not apply to cases arising before the effective date).

Other courts have reached the opposite conclusion and applied section 102 retroactively. In *Mojica v. Gannett Co.*, 779 F.Supp. 94 (N.D.Ill.1991), the court held the legislative history does not unambiguously reject the retroactive application of the 1991 Civil Rights Act. *Id.* at 95–96. After reviewing the legislative history, the court noted:

> Senator Danforth, one of the cosponsors of the legislation, at one time stated on the floor of the Senate that the new legislation was to apply prospectively only. Senator Kennedy expressed a disagreement with that view. Ultimately, however, Senator Danforth expressed the view that there was no clear legislative history, only various and inconsistent statements from a number of senators and representatives and that any court seeking to interpret the statute should look to the language of the statute, not the statements of the legislators, and apply appropriate rules of construction. See 137 Cong.Rec. S15,483 (daily

ed. Oct. 30, 1991); Id. S15,325 (daily ed. Oct. 29, 1991).

*Id.* at 96. The *Mojica* court looked also to judicial precedent to decide that the 1991 Civil Rights Act should be retroactively applied to pending cases. *Id.* at 96 ("The parties agree that the legislative debates are inconclusive and that the court should construe the language of the statute based on case precedent.").

In *Graham v. Bodine Elec.*, 782 F.Supp. 74 (N.D.Ill.1992), the district court expanded on the decision in *Mojica*. The court focused on the fact that the 1991 Civil Rights Act was designed to overrule the Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The court stated "[i]n cases where Congress is correcting Supreme Court interpretations of a statute rather than creating new rights, the statute is frequently interpreted retroactively absent evidence of intent to the contrary." 782 F.Supp. at 76 (citing *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir.1987); *Leake v. Long Island Jewish Med. Center*, 695 F.Supp. 1414, 1417 (E.D.N.Y.1988), *aff'd*, 869 F.2d 130 (2d Cir. 1989)). The *Graham* court's analysis, however, fails to recognize that the rights to compensatory damages and a jury trial are not pre-*Patterson* doctrines, but are new rights created by the 1991 Civil Rights Act. Accordingly, its argument is not persuasive.

The *Graham* court also found a manifest injustice would not result by applying section 102 retroactively. *Id.* at 76–77. With respect to the first factor, whether the matter involves private parties or is a matter of public concern, the court conceded the issues involve substantial public concern. *Id.* at 76. However, after examining the second factor, whether the new statute infringes upon or deprives a person of an unconditional right, and the third factor, whether the new statute imposed new obligations, the court concluded there was no manifest injustice. The court stated:

> Because most of defendant's alleged conduct took place before *Patterson*, the court does not believe that a return to

the rule that existed at the time of the conduct would be manifestly unfair. . . . [T]he only right implicated would be defendant's right to a bench trial; this is not a substantive right.

*Id.* at 76. Moreover, because defendant's conduct was already prohibited, the court held retroactive application does not impose any new obligations. *Id.* Again, the *Graham* court fails to recognize that compensatory damages and jury trials were not pre-*Patterson* doctrines.

Other courts have retroactively applied section 102 without discussing *Bradley* and *Georgetown* or providing the rationale for their decisions. In *King v. Shelby Medical Center,* 779 F.Supp. 157 (N.D.Ala.1991), the court applied the compensatory damages provision retroactively; it, however, declined to address the scholarly arguments in favor of or opposed to retroactive application and relied on the Eleventh Circuit's most recent decision applying a statute awarding double damages retroactively. *Id.* at 157–158. With respect to the jury trial provision the court held it was entitled to retroactive application. *Id.* at 158–159. The *King* court's decision focused on the procedural aspect of the right to a jury trial and concluded procedural rights should be construed as applying retroactively. *Id.* at 158; *Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302 (N.D.Cal.1992); *Davis v. Tri–State Mack Distribs.,* 1991 Daily Lab. Rep. (BNA) No. 250, at A–5, 1991 WL 316891 (E.D.Ark. 16 Dec. 1991) (opinion not found); *La Cour v. Harris County,* No. 89–1532, 1991 WL 321020 1991 U.S. Dist. LEXIS 19223, 57 Fair Empl. Prac. Cas. (BNA) 622 (S.D.Tex. 6 Dec. 1991) (no rationale provided for court's decision).

Having reviewed the current split of authority, prospective application of section 102 is the preferred approach. *Georgetown* is the more recent case which most likely reflects the position of the current Supreme Court. In addition, the Third Circuit's decision in *Davis* points to the adoption of *Georgetown* over *Bradley* in this instance. As previously discussed, the Third Circuit will apply the *Georgetown* rule "when application of the new law

would affect rights or obligations existing prior to the change in law.'" 883 F.2d at 1170. In this case, defendants in Title VII actions prior to the 1991 Civil Rights Act clearly were not subject to liability for compensatory damages. The imposition of such damages affects substantive rights and imposes additional obligations; accordingly, section 102 impacts upon obligations existing prior to its enactment.

Even assuming, however, the Third Circuit were to adopt the *Bradley* decision, retroactive application of section 102 would result in a manifest injustice. As conceded by the court in *Graham,* the issues clearly involve matters of public concern. 782 F.Supp. at 76. Contrary to the *Graham* court's conclusion, the third factor is also triggered in this instance. As stated, the right to compensatory damages imposes a new obligation on a defendant which did not exist prior to the 1991 Civil Rights Act.

Of significant importance is the *Van Meter* court's discussion of the sovereign immunity concerns raised by retroactive application. With respect to federal defendants, the 1991 Civil Rights Act waives sovereign immunity to jury trials and compensatory damages. Neither of these rights existed prior to the enactment of the 1991 Civil Rights Act. In light of the lack of notice afforded federal defendants, such a waiver of sovereign immunity cannot be imposed on federal defendants absent a clear intention of Congress to do the same. Although the sovereign immunity argument only applies to federal defendants, it is unlikely Congress intended separate results for federal and private defendants.

*Conclusion*

Prospective application of section 102 of the 1991 Civil Rights Act is proper under *Georgetown, Van Meter* and their progeny. *Georgetown* mandates that absent clear legislative history to the contrary, statutes are to be applied prospectively. For the reasons set forth above, the motion seeking to amend the Complaint to add a demand for a jury trial and to request compensato-

ry damages is denied. This opinion supplements the 27 January 1992 Opinion.