UNITED STATES *v.* CHAMBERS ET AL.

No. 659. Argued January 16, 17, 1934.—Decided February 5, 1934.

218

*Solicitor General Biggs,* with whom *Mr. Robert P. Reeder* was on the brief, for the United States.

*Messrs. Z. I. Walser* and *William M. Hendren,* with whom *Messrs. Don A. Walser* and *Leland Stanford* were on the brief, for appellees.

Mr. Chief Justice Hughes delivered the opinion of the Court.

Claude Chambers and Byrum Gibson were indicted in the District Court for the Middle District of North Carolina for conspiring to violate the National Prohibition Act, and for possessing and transporting intoxicating liquor contrary to that Act, in Rockingham County in that State. The indictment was filed on June 5, 1933. Chambers pleaded guilty but prayer for judgment was continued until the December term. On December 6, 1933, the case was called for trial as to Gibson. Cham-

bers then filed a plea in abatement and Gibson filed a demurrer to the indictment, each upon the ground that the repeal of the Eighteenth Amendment of the Federal Constitution deprived the court of jurisdiction to entertain further proceedings under the indictment. The District Judge sustained the contention and dismissed the indictment. The Government appeals. 18 U.S.C. § 682.

This Court takes judicial notice of the fact that the ratification of the Twenty-first Amendment [1] of the Constitution of the United States, which repealed the Eighteenth Amendment, was consummated on December 5, 1933. *Dillon* v. *Gloss*, 256 U.S. 368. Upon the ratification of the Twenty-first Amendment, the Eighteenth Amendment at once became inoperative. Neither the Congress nor the courts could give it continued vitality. The National Prohibition Act, to the extent that its provisions rested upon the grant of authority to the Congress by the Eighteenth Amendment, immediately fell with the withdrawal by the people of the essential constitutional support. The continuance of the prosecution of the defendants after the repeal of the Eighteenth Amendment, for a violation of the National Prohibition Act alleged to have been committed in North Carolina, would involve an attempt to continue the application of the statutory

---

[1] Article XXI of the Amendments of the Constitution provides as follows:

" Section 1. The eighteenth article of amendment to the Constitution of the United States is hereby repealed.

" Sec. 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

" Sec. 3. This article shall be inoperative unless it shall have been ratified as an amendment to the Constitution by conventions in the several States, as provided in the Constitution, within seven years from the date of the submission hereof to the States by the Congress."

provisions after they had been deprived of force. This consequence is not altered by the fact that the crimes in question were alleged to have been committed while the National Prohibition Act was in effect. The continued prosecution necessarily depended upon the continued life of the statute which the prosecution seeks to apply. In case a statute is repealed or rendered inoperative, no further proceedings can be had to enforce it in pending prosecutions unless competent authority has kept the statute alive for that purpose.

The decisions of this Court afford abundant illustration of this principle. In *Yeaton* v. *United States,* 5 Cranch 281, 283, where the statute under which a ship had been condemned in admiralty had expired while the case was pending on appeal, the Court held that the cause was to be considered as if no sentence had been pronounced. Chief Justice Marshall said that " it has long been settled, on general principles, that after the expiration or repeal of a law, no penalty can be enforced, nor punishment inflicted, for violations of the law committed while it was in force, unless some special provision be made for that purpose by statute." Chief Justice Taney observed in *Maryland* v. *Baltimore & Ohio R. Co.,* 3 How. 534, 552: " The repeal of the law imposing the penalty, is of itself a remission." In *United States* v. *Tynen,* 11 Wall. 88, 95, the Court thus stated the principle applicable to criminal proceedings: " There can be no legal conviction, nor any valid judgment pronounced upon conviction, unless the law creating the offence be at the time in existence. By the repeal the legislative will is expressed that no further proceedings be had under the Act repealed." See, also, *Norris* v. *Crocker,* 13 How. 429, 440; *Gulf, C. & S. F. Ry. Co.* v. *Dennis,* 224 U.S. 503, 506.

The Government endeavors to avoid the application of this established principle by invoking the general saving provision enacted by the Congress in relation to the

repeal of statutes. That provision is to the effect that penalties and liabilities theretofore incurred are not to be extinguished by the repeal of a statute " unless the repealing act shall so expressly provide," and to support prosecutions in such cases the statute is to be treated as remaining in force. R.S., § 13; 1 U.S.C. § 29.[2] But this provision applies, and could only apply, to the repeal of statutes by the Congress and to the exercise by the Congress of its undoubted authority to qualify its repeal and thus to keep in force its own enactments. It is a provision enacted in recognition of the principle that, unless the statute is so continued in force by competent authority, its repeal precludes further enforcement. The Congress, however, is powerless to expand or extend its constitutional authority. The Congress, while it could propose, could not adopt the constitutional Amendment or vary the terms or effect of the Amendment when adopted. The Twenty-first Amendment contained no saving clause as to prosecutions for offenses theretofore committed. The Congress might have proposed the Amendment with such a saving clause, but it did not. The National Prohibition Act was not repealed by Act of Congress but was rendered inoperative, so far as authority to enact its provisions was derived from the Eighteenth Amendment, by the repeal, not by the Congress but by the people, of that Amendment. The Twenty-first Amendment gave to the Congress no power to extend the operation of those provisions. We are of the opinion that in such a case the statutory provision relating to the repeal of statutes by the Congress has no application.

[2] The text of the provision is as follows: " The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

The Government cites decisions involving changes from territorial to state governments and recognizing the authority of the Congress to provide for the transfer of pending cases from territorial courts to the courts established within the new States. *Pickett* v. *United States,* 216 U.S. 456; *United States* v. *Baum,* 74 Fed. 43; compare, *Moore* v. *United States,* 85 Fed. 465. These decisions present no analogy to the instant case. As the function and jurisdiction of territorial courts would naturally terminate when a territory becomes a. State, some provision for the transfer of pending business is necessary and the Congress has adequate authority to that end. The Constitution authorizes the Congress to admit new States into the Union (Art. IV, § 3, par. 1), and, also, to provide in the case of crimes, not committed within any State, for trial at such place as the Congress may direct (Art. III, § 2, par. 3). The Congress, in admitting a new State, may thus transfer " jurisdiction in respect of local matters to state courts and of civil and criminal business and jurisdiction arising under the laws of the United States to courts of the United States when they should come into existence." *Pickett* v. *United States, supra,* at p. 459; *Forsyth* v. *United States,* 9 How. 571, 576, 577. In such cases, jurisdiction for the trial of pending criminal actions depends upon the provisions of the enabling Act. *Id.* Provision in the enabling Act for the vote of the people of the territory, as a condition precedent to the establishment of the new State and the adoption of its constitution, does not alter the fact that the State is admitted to the Union by the Congress under its constitutional authority. In the instant case, constitutional authority is lacking. Over the matter here in controversy, power has not been granted but has been taken away. The creator of the Congress has denied to it the authority it formerly possessed and this denial, being unqualified, necessarily defeats any legislative attempt to extend that authority.

Finally, the argument is pressed that the rule which is invoked is a common law rule and is opposed to present public policy. We are told that the rule of construction, evidenced by the saving provision adopted by the Congress in relation to the repeal of statutes, is firmly entrenched and attention is directed to corresponding statutory provisions in most of the States. But these state statutes themselves recognize the principle which would obtain in their absence. The question is not one of public policy which the courts may be considered free to declare, but of the continued efficacy of legislation in the face of controlling action of the people, the source of the power to enact and maintain it. It is not a question of the developing common law. It is a familiar maxim of the common law that when the reason of a rule ceases the rule also ceases. See *Funk* v. *United States*, 290 U.S. 371. But, in the instant case, the reason for the rule has not ceased. Prosecution for crimes is but an application or enforcement of the law, and if the prosecution continues the law must continue to vivify it. The law, here sought to be applied, was deprived of force by the people themselves as the inescapable effect of their repeal of the Eighteenth Amendment. The principle involved is thus not archaic but rather is continuing and vital,—that the people are free to withdraw the authority they have conferred and, when withdrawn, neither the Congress nor the courts can assume the right to continue to exercise it.

What we have said is applicable to prosecutions, including proceedings on appeal, continued or begun after the ratification of the Twenty-first Amendment. We are not dealing with a case where final judgment was rendered prior to that ratification. Such a case would present a distinct question which is not before us.

The judgment dismissing the indictment is

*Affirmed.*