**Kelvin D. SMITH, Plaintiff,**

v.

**PETRA CABLEVISION CORP., d/b/a Viacom Cablevision and Eric Kronen, Defendants.**

**No. CV–88–2091(CBA).**

United States District Court, E.D. New York.

May 20, 1992.

Noah Kinigstein, New York City, for plaintiff.

Townley & Updike by Jerome P. Coleman, New York City, for defendants.

## MEMORANDUM AND ORDER

AMON, District Judge.

### I. *Introduction*

On November 5, 1990, argument was held on defendants' original motion to dismiss the amended complaint in this case, plaintiff's cross-motion to disqualify defendants' counsel, and defendants' motion for sanctions pursuant to Fed.R.Civ.P. 11. After hearing argument, the Court denied plaintiff's motion to disqualify and denied defendants' motion for sanctions. Defendants' motion to dismiss was granted as to the first cause of action alleging a violation of 42 U.S.C. § 1981, with leave to replead, and a decision on defendants' motion to dismiss plaintiff's pendent state claims and strike plaintiff's demand for compensatory damages pursuant to his Title VII claim was reserved.

Plaintiff then amended his complaint for the second time restating his Section 1981 claim in his first and fifth causes of action. In his first cause of action, plaintiff asserts that the defendants' actions violated 42 U.S.C. § 1981, in that the relevant grievance procedures outlined in the manual were not complied with at any time, although such procedures were complied with for similarly situated white individuals. (*Complaint*, ¶ 17). As a fifth cause of action plaintiff again invoked 42 U.S.C. § 1981 alleging that Section 1981 was violated when defendants refused to enter into a new contract to rehire him in another position, although defendants routinely did so for similarly situated white individuals. (*Complaint*, ¶ 25).

Defendants subsequently renewed their motion to dismiss these claims and the pendent state claims, and to strike plaintiff's demand for compensatory damages under Title VII. On January 15, 1992, the Court issued a Memorandum and Order dismissing the plaintiff's Section 1981 claims, as contained in his first and fifth cause of action, and his demand for compensatory damages under Title VII. The state law claims were retained as pendant to the Title VII claim.

The Court found that as to plaintiff's argument that the defendants entered into the employment contract with an intent to either not honor the contract or to terminate the contract because of plaintiff's race, such a Section 1981 claim was barred by the Supreme Court's holding in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Plaintiff's theory that defendants' failure to rehire him after his discharge was actionable under Section 1981, was found to be simply a claim for discriminatory discharge, again barred by *Patterson*. As to plaintiff's claim that defendants discriminatorily failed to enforce the relevant grievance procedures, the Court found no evidence of any obstruction of plaintiff's access to judicial or non-judicial fora for resolution of the employment dispute.[1]

---

**1.** This last issue was decided, upon consent of the parties, as a motion for summary judgment.

Plaintiff has since moved for reargument maintaining that the Civil Rights Act of 1991 should be applied retroactively to the instant case. Plaintiff argues that application of the 1991 Act would result in reinstatement of his dismissed Section 1981 claims,[2] as well as allowing compensatory damages and a jury trial on his Title VII claim. The Court agreed to hear reargument on the issue of the retroactivity of the Civil Rights Act of 1991. For the reasons stated below, the Court finds that the Civil Rights Act of 1991 is to be applied prospectively, and plaintiff's motion is therefore denied.

## II. *Discussion*

On November 21, 1991, President Bush signed into law the Civil Rights Act of 1991, Pub.Law No. 102–166, 105 Stat. 1071 (1991) (the "Act" or "CRA"). The CRA was the product of a congressional effort to pass a civil rights bill that would "respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination." Civil Rights Act of 1991, § 3.[3]

The Act altered prior law in three ways which are relevant to the instant case. Section 101 of the Act amended 42 U.S.C. § 1981, by adding a new subsection (b) which states:

For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

A new subsection (c) makes clear that the protections of Section 1981 apply to nongovernmental discrimination as well as that occurring under color of state law.

Section 102 of the Act adds a new section following 42 U.S.C. § 1981 which provides that:

In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5) against a respondent who engaged in unlawful intentional discrimination ... prohibited under section 703, 704, or 717 of the Act ... and provided that the complaining party cannot recover under section 1977 of the revised statutes (42 U.S.C.1981), the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

Section 102 also states that where a complaining party seeks compensatory or punitive damages under that section, any party may demand a jury trial.[4]

**2.** The Court notes that plaintiff's "enforcement" claim, decided upon summary judgment, would remain unaffected by application of the Civil Rights Act of 1991.

**3.** The Act overturns or modifies eight recent Supreme Court decisions: (1) Section 101 overturns the decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), as regards the scope of 42 U.S.C. § 1981; (2) Sections 104 and 105 overturn the decision in *Wards Cove Packing Co. v. Antonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), regarding the legal standards controlling disparate impact cases; (3) Section 107 overturns the decision in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); (4) Section 108 overturns the decision in *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), as regards the permissibility of collateral challenges to affirmative action plans in consent decrees and court orders; (5) Section 109 overturns the decision in *EEOC v. Aramco,* — U.S. —, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), as regards the

applicability of Title VII in overseas workplaces; (6) Section 112 overturns the decision in *Lorance v. AT & T,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989); (7) Section 113 overturns the decision in *West Virginia University Hospitals, Inc. v. Casey,* — U.S. —, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); and (8) Section 114 overturns the decision in *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). The general effect of the CRA was to restore the law to the state at which it existed prior to these decisions.

**4.** Even if the Court were to find that the Act is to be applied retroactively, plaintiff would not be entitled to compensatory damages or a jury trial on his Title VII claim. Compensatory damages under Section 102 of the Act are available only if the "complaining party cannot recover under" 42 U.S.C. § 1981. In this case, if the Act is applied retroactively, plaintiff would be able to state a claim under Section 1981, and thus could not collect compensatory damages on his Title VII claim. Without a claim for compensa-

At issue in this case is whether these provisions of the Civil Rights Act of 1991 should be applied retroactively to cases pending at the time of, or as to conduct occurring prior to, the passage of the Act.

The Supreme Court authority on the retroactivity of legislation has proceeded along divergent lines. In *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Court, relying on *Thorpe v. Durham Housing Authority*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), held that "a court is to apply the law in effect at the time it renders its decision." *Bradley*, 416 U.S. at 712, 94 S.Ct. at 2016. The two exceptions to this rule are where retrospective application of a law would result in manifest injustice to one of the parties or where there is clear congressional intent to the contrary. *Id.* at 713, 94 S.Ct. at 2017. A conflicting position was expressed in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 207, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), where the Court stated that "[r]etroactivity is not favored in the law.... [C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* (as quoted in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990)). The conflict between these two views was recognized in *Kaiser*, 110 S.Ct. at 1577. The *Kaiser* Court, however, declined to resolve this conflict because it found that under either view, *Bradley* or *Bowen*, "where congressional intent is clear, it governs." *Kaiser*, 110 S.Ct. at 1577. Thus, in *Kaiser*, the Court was able to resolve the issue by looking to the language of the statute in question and congressional intent.[5]

Accordingly, this Court's analysis of the CRA must begin with the language of the statute. As a general rule of statutory interpretation, where the statute's language is plain, absent a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 109, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

### A. The Language of the Civil Rights Act of 1991

Section 402(a) of the Act states that "[e]xcept as otherwise specifically provided, this Act and the amendments made by the Act shall take effect upon enactment." Two other provisions are also relevant. Section 109 deals with discrimination by American companies against U.S. citizens working abroad. Section 109(c) states that "[t]he amendments made by this section shall not apply with respect to conduct occurring before the date of the enactment of this Act." Also of note is Section 402(b), an amendment offered by Senator Frank Murkowski, designed to provide a safe haven for the parties in the *Wards Cove* case. That section provides that:

> Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.

Civil Rights Act of 1991, § 402(b).

Plaintiff maintains that the provisions of Sections 109(c) and 402(b), stating that the Act will not be given retroactive effect as to these two discrete classes of claims, demonstrate that Congress intended Section 402(a) to give retroactive effect to the remaining provisions of the CRA. These

---

tory damages, there is no jury trial of Title VII causes of action. This fits with the purpose of Section 102 which was to provide these remedies in situations where comparable recovery was not possible under 42 U.S.C. § 1981, i.e., where discrimination was based on factors other than race, such as gender or age.

**5.** Justice Scalia wrote a concurrence which, although agreeing with the majority that the stat-

ute in question should be applied retroactively, argued that the Court should take the opportunity presented to resolve the conflict between the *Bradley* and *Bowen* line of cases. *Kaiser*, 110 S.Ct. at 1579. Justice Scalia argued that the *Bradley* line of cases was an anomaly and rested upon questionable jurisprudential footing, and that *Bowen* represented the correct view. *Id.*

provisions would, according to plaintiff, be redundant if Section 402(a) were to be read as requiring prospective application of the entire Act. *See, e.g., Mackey v. Lanier Collection Agency & Serv. Inc.*, 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988); *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) ("Where Congress includes particular language in one section of a statute but omits it from another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.").

In addition, plaintiff argues that Congress intended the Act "to take effect upon enactment." Since the purpose of the Act was to overturn prior Supreme Court rulings and restore the law to its prior position, plaintiff reasons that the Act can only "take effect upon enactment" in a meaningful way if retroactive application is required. If not, the law which Congress sought to overrule would continue to be the prevailing law in thousands of cases where the complained of conduct occurred prior to November 21, 1991. According to plaintiff this would result in years of litigation utilizing interpretations of the law which Congress sought to overrule.

Plaintiff's view finds support in some of the recent cases which have examined the retroactivity question and have found the language of the statute to support retrospective application. *See, e.g., Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302 (N.D.Cal.1992). Most courts, however, have acknowledged, even where ultimately applying the Act retroactively, that the language of the statute is less than clear and that it is possible to read the language as supporting prospective, as well as retrospective application. *See, e.g., Mojica v. Gannett Co., Inc.*, 779 F.Supp. 94 (N.D.Ill. 1991) (finding Act retroactive but acknowledging language and legislative history is unclear); *Tyree v. Riley*, 783 F.Supp. 877, 889 (D.N.J.1992) (finding language and leg-

islative history unclear and applying act prospectively).

Although Section 402(b) has been relied upon as supporting the conclusion that the other provisions of the Act are retroactive, an equally fair reading is that Section 402(b) was included simply to ensure that the Act would not be read to allow further litigation in *Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), and that no further significance can be attributed to this section. *See Thompson v. Johnson & Johnson Management Information Center*, 783 F.Supp. 893 (D.N.J.1992). The legislative history, which is discussed in greater detail below, indicates that Section 402(b) was intended to apply only to the *Wards Cove* case. *See* 137 Cong.Rec. S15,483 (daily ed. Oct. 30, 1991) (Statement of Sen. Danforth); 137 Cong.Rec. H9512 (daily ed. Nov. 7, 1991) (statement of Rep. Hyde); Cong.Rec. S15,954 (daily ed. Nov. 5, 1991) (letter of Sen. Murkowski). *See also Khandelwal v. Compuadd Corp.*, 780 F.Supp. 1077, 1079–80 (E.D.Va.1992). Given that there was considerable uncertainty among members of Congress as to whether the act would be applied prospectively or retrospectively, *see infra*, § II.B.2, it is logical to conclude that Congress simply sought to insure that no matter what happened to the rest of the Act, *Wards Cove* would be immune. *See Thompson*, 783 F.Supp. at 895. The same reasoning applies to Section 109(c).

Similarly, the fact that the Act was to "take effect upon enactment" can be read as indicating that the provisions of the Act would only apply to cases instituted and conduct occurring after the enactment of the legislation. Another plausible reading is that the language has no relation to the retroactivity question and was included simply to make clear that the Act would become law upon enactment, not at some specified time in the future.[6]

---

**6.** In addition, several Courts have found support for prospective application in Section 102(a) of the Act. *See Thompson*, 783 F.Supp. at 895; *VanMeter v. Barr*, 778 F.Supp. 83 (D.D.C.1991). According to Section 102(a), a "complaining

party" may seek compensatory and punitive damages and a jury trial. Section 102(d) defines a "complaining party" as the "Equal Employment Opportunity Commission, the Attorney General, or a person who may bring an

Moreover, Congress has demonstrated on several occasions that when it seeks to make a law retroactive it knows how to make its intention clear. *See, e.g.*, The Black Lung Benefits Act, 30 U.S.C. § 945(a)(1) and (c) (1986) (providing for processing claims "pending on, or denied on or before" the effective date of the statute, and awarding benefits retroactively); The Federal Home Loan Act, 12 U.S.C. § 1439a (1989 & Supp.1991) (all monies deposited pursuant to the statute shall be available "retroactively as well as prospectively...."). In fact, the Civil Rights Act of 1990, which was vetoed by President Bush, specifically provided for retroactive application. *See* § II.B.1 infra.

Thus, it would appear that a reasonable argument could be made for either retroactive or prospective application of the Act based solely upon its language. Accordingly, the Court next looks to the legislative history of the CRA.

## B. *Legislative History of the Civil Rights Act of 1991*

### 1. Prior Proposed Legislation

A review of the legislative history of the Act does little to clarify Congress' intent.[7] Indeed many courts reviewing the legislative history have been unable to decipher a clear intent on the part of Congress. *See Mojica*, 779 F.Supp. at 96; *Stender*, 780 F.Supp. at 1305; *Khandelwal*, 780 F.Supp. at 1080; *Johnson v. Rice*, Civ.A. No. 2:85–CV–1318, 1992 WL 16284, *2 (S.D.Ohio 1992); *Tyree v. Riley*, 783 F.Supp. at 888.

Initially it should be noted that the proposed Civil Rights Act of 1990 contained a

provision which unambiguously stated that the Act would have retroactive effect. Section 15(a)(4) of that bill provided that Section 8, providing for jury trials, compensatory and punitive damages, "shall apply to all proceedings pending on or commenced after the date of the enactment of this Act." The 1990 Act was, however, vetoed by President Bush. One reason for this veto was the administration's opposition to retroactive application of the Act. *See President's Message to the Senate Returning Without Approval the Civil Rights Act of 1990*, 26 Weekly Comp.Pres. Doc. 1632, 1634 (Oct. 22, 1990) (cited in *Doe v. Board of County Commissioners, Palm Beach County*, 783 F.Supp. 1379, 1383 (S.D.Fla.1992)). Thus, the 1990 Act unambiguously stated a congressional intent to apply the provisions of the Act retroactively. Such clear direction is noticeably absent from the present version of the Act. *See Johnson v. Rice*, Civ.A. No. 2:85–CV–1318, 1992 WL 16284 (S.D.Ohio 1992).

Other legislative events, however, might lend some credence to the view that retroactivity was intended. There were several attempts made to introduce provisions which would have specifically mandated prospective application.[8] These were all rejected. At the same time, however, the House version of the Act, H.R. 1, 102nd Cong., 2d Sess., specifically stated that the proposed legislation would apply to pending cases, *see* H.R. 1, § 113, a provision missing from the enacted legislation.

Originating in the Senate, the language now contained in Section 402(a) of the CRA was originally contained in Section 22 of

---

action or proceeding under title VII." One plausible reading of this provision is that only a party who has yet to bring suit may seek the additional remedies provided for by the CRA.

7. As the court noted in *Tyree*, at 885, resort to legislative history to decipher ambiguous statutes is now axiomatic. *See Oklahoma v. New Mexico*, —— U.S. ——, —— n. 5, 111 S.Ct. 2281, 2289 n. 5, 115 L.Ed.2d 207 *reh'g denied*, —— U.S. ——, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991). At the same time, however, the analysis of legislative history must be done cautiously. *See Blanchard v. Bergeron*, 489 U.S. 87, 99, 109 S.Ct. 939, 947, 103 L.Ed.2d 67 (1989). Statements made by legislative sponsors are a proper guide

to a statute's construction, but general remarks by legislators have little authority. *See North Haven Board of Education v. Bell*, 456 U.S. 512, 527, 102 S.Ct. 1912, 1921, 72 L.Ed.2d 299 (1982).

8. *See* H.R.Rep. 101–644, pt. 2, p. 71, 101st Cong.2d Sess. (1990) (rejection of amendment by House Judiciary Committee); H.R. Rep. 101–644, pt. 1, p. 90, 101st Cong.2d Sess. (1990) (House Committee on Education and Welfare); 136 Cong.Rec. H6786 (daily ed. Aug. 2, 1990) (*id.*); 136 Cong.Rec. H3834–02 § 14 (daily ed. June 4, 1991) (House rejected substitute which would have limited application of the Act to future cases).

S.1745, proposed by Sen. Danforth in June of 1991. Sen. Murkowski objected to the language on the grounds that he believed that S.1745 would apply retroactively to the *Wards Cove* case. He proposed what is now Section 402(b) in order to insure that the *Wards Cove* parties would not be forced to undergo additional litigation. The final language of the CRA was negotiated as part of a compromise during the week of October 21, 1991. During these negotiations, the administration and conservative lawmakers sought the adoption of a provision which would have mandated prospective application of the CRA. Sponsors of the legislation did not add a blanket exemption but did provide for the inclusion of Section 402(b). Plaintiff argues that this rejection of a blanket exclusion supports retroactive application.

In sum, the path leading to the enactment of the CRA was a long and winding one, with no clear roadmarks delineating congressional intent on prospective versus retrospective application of the CRA. Although attempts to insert a blanket exclusion to prevent pending cases from falling under the purview of the Act were rejected, there was likewise no adoption of a provision clearly stating that the Act would be applied retrospectively. Such a provision was included in the proposed Civil Rights Act of 1990 and H.R. 1. The absence of similar provisions in the Act is as noteworthy as the failed attempts by the administration to gain a prospectivity provision.

### 2. Debates and Reports

The CRA was adopted by Congress without ever having been referred to committee. Thus, there are no committee reports on the legislation available. Accordingly, the only other relevant legislative history is to be found in the floor debates. At the outset it should be noted that such debates are of questionable interpretive value. *See, e.g., North Haven Board of Education v. Bell*, 456 U.S. 512, 527, 102 S.Ct. 1912, 1921, 72 L.Ed.2d 299 (1982). Indeed, legislators often use such debates in an attempt to mold the legislative history to conform with their views. With this in mind, we turn to the conflicting legislative record.

Senator Danforth, who was one or the principal sponsors, submitted an interpretive memorandum during the course of debate on the Act. He stated that it was his interpretation that the Act not be applied retroactively:

My review of the Supreme Court case law supports my reading that in the absence of an explicit provision to the contrary, no new legislation is applied retroactively. Rather, new statutes are to be given prospective application only, unless Congress explicitly provides otherwise, which we have not done in this instance. Support for this proposition is derived from Justice Scalia's concurring opinion in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, [494 U.S. 827, 841] 110 S.Ct[.] 1570, 1579 [108 L.Ed.2d 842] (1990), and the unanimous opinion of the Supreme Court in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208 [109 S.Ct. 468, 471, 102 L.Ed.2d 493] (1988), and the numerous cases cited by Justice Kennedy in Bowen.

I acknowledge that there appears to be two cases that do not adhere to this principle but instead support retroactive application of new statutes in the absence of "manifest injustice." *Bradley v. Richmond School Board*, 416 U.S. 696 [94 S.Ct. 2006, 40 L.Ed.2d 476] (1974); *Thorpe v. Housing Authority of Durham*, 393 U.S. 268 [89 S.Ct. 518, 21 L.Ed.2d 474] (1969). The sponsors disapprove of these cases.

Our intention in drafting the effective date provision was to adhere to the principle followed by the vast majority of Supreme Court cases and exemplified by Bowen and Justice Scalia's concurrence in Bonjorno.

Subsection 22(b), regarding certain disparate impact cases, is intended only to provide additional assurance that the provisions of the bill will not be applied to certain case which fit the provision of that subsection. It should not be read in derogation of the sponsors' intention not to provide for retroactive effect or application as expressed in subsection 22(a) of the bill.

137 Cong.Rec. S15,483 (daily ed. Oct. 30, 1991). This memorandum was also signed by Senators Cohen, Hatfield, Specter, Chafee, Durenberg and Jeffords. *Id.* at S15,-485. Sen. Danforth acknowledged, however, that his views on the effect of the statute may not have been shared by the entire Senate. *See* 137 Cong.Rec. S15,325 (daily ed. Oct. 29, 1991). It is also clear that his view on retroactivity is derived from an interpretation of *Bowen* and *Kaiser. See* M. Rossein, *Application of the Civil Rights Act of 1991 to "Existing Claims",* in *The Civil Rights Act of 1991* 175 (American Law Institute 1992).

In addition to Sen. Danforth's remarks, there are the remarks of the Minority Leader, Sen. Dole. On October 30, 1991, Sen. Dole stated that "Section 22 specifies that the act and the amendments made by the Act take effect upon enactment. Accordingly, they will not apply to cases arising before the effective date of the Act." 137 Cong.Rec. S15,478 (daily ed. Oct. 30, 1991).[9] On November 5, 1991, Sen. Dole inserted an interpretive memorandum into the record regarding the legislative history of the Murkowski Amendment. The memorandum echoed Sen. Danforth's statement that no inference was intended or should be drawn from the language of Section 402(b) that the remainder of the Act was to be applied retroactively. 137 Cong.Rec. S15,-953 (daily ed. Nov. 5, 1991). These remarks obviously support prospective application, although their value in ascertaining congressional intent is somewhat limited. *See, e.g., North Haven Board of Education,* 456 U.S. at 527, 102 S.Ct. at 1921.

On the other side of the aisle, several Democrats spoke in favor of retrospective application of the Act. Senator Kennedy, a principal sponsor of the Act, spoke at both the October 30th and November 5th sessions on the Act. On October 30, 1991, Kennedy stated that he agreed with Danforth's interpretive memorandum except with respect to the effective date of the Act. 137 Cong.Rec. S15,485 (daily ed. Oct.

30, 1991). Similarly, on November 5th Kennedy stated that:

> With the exception of the Murkowski amendment, this language will leave it to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment.

> There is disagreement among the supporters of the bill regarding this issue. Courts frequently apply newly enacted procedures and remedies to pending cases. This was the Supreme Court's holding in *Bradley* ..., and *Thorpe* ..., in which the Court states: "The general rule ... is that an appellate court must apply the law in effect at the time it renders its decision."

\* \* \* \* \* \*

> Many of the provisions of the Civil Rights Act of 1991 are intended to correct erroneous Supreme Court decisions and to restore the law to where it was prior to those decisions. In my view, these restorations apply to pending cases, which is why the supporters of the Murkowski amendment sought specific language to prevent the restoration from applying to that particular case.

137 Cong.Rec. S15,963 (daily ed. Nov. 5, 1991). This view was also expressed in the House of Representatives. Representative Edwards spoke in favor of retroactivity and stated that it was his belief that the weight of the case law, as expressed in *Bradley,* supports the application of the Act to pending cases. 137 Cong.Rec. H9531 (daily ed. Nov. 7, 1991). This view was endorsed by Representative Fish, a Republican sponsor of the bill in the House. *Id.* at H9532.

Based on these conflicting statements, it is impossible to discern any clear congressional intent as to whether the CRA was to be applied to cases pending at the time of its enactment. It is apparent that both those favoring retroactivity and those favoring prospectivity were unable to gain inclusion of a provision unambiguously

---

**9.** According to Sen. Dole, this view was shared by Senators Burns, Cochran, Garn, Gorton, Grassley, Hatch, Mack, McCain, McConnell, Murkowski, Simpson, Seymour and Thurmand. *Id.* at S15,472. *See also Tyree,* 783 F.Supp. at 887.

stating their position. Moreover, the statements of Sens. Danforth and Kennedy show that each was basing his view of the Act's retroactivity purportedly on his expectation of how the courts would resolve the conflict between *Bradley* and *Bowen.* All that can be said for certain is that Congress did not want to resolve the issue for fear of destroying the fragile bipartisan coalition supporting the Act. Indeed, what expressions of legislative history there are indicate that members of Congress fully expected the issue to be resolved by the courts and that their views on retroactivity were based upon their individual interpretation and conciliation of the *Bradley* and *Bowen* cases.

## C. *EEOC Interpretation*

Defendant contends that the Court should be guided by the interpretation of the Act set forth in a policy statement issued by the Equal Employment Opportunity Commission ("EEOC") on December 27, 1991. The EEOC, in discussing how it would handle actions under the CRA, stated that "the damages provisions ... are to be considered as a remedy in all cases involving intentional discriminatory conduct that occurred on or after the Act's effective date...." EEOC Notice, No. 915,002 (Dec. 27, 1991) (quoted in *Tyree,* 783 F.Supp. at 888). *See also Doe v. Board of County Commissioners,* 783 F.Supp. at 1382.

The EEOC policy statement said that the Commission had found the language and legislative history of the Act to be unclear as to the effect on pending cases. Accordingly, it was faced with a choice between the two conflicting presumptions of *Bradley* and *Bowen.* Faced with this choice, the EEOC chose to follow *Bowen* and found the Act to apply only to cases involving post-enactment conduct.

The question is what weight, if any, does this determination deserve. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (where congressional intent is unclear, the courts should defer to a reasonable agency inter-pretation of a congressional enactment); *Morton v. Ruiz,* 415 U.S. 199, 231–232, 94 S.Ct. 1055, 1072–73, 39 L.Ed.2d 270 (1974). At least one court has, based upon *Chevron,* given the EEOC statement considerable deference. *See Tyree,* 783 F.Supp. at 890. For a number of reasons, however, the EEOC statement is not controlling. In the first instance, the EEOC has not enacted regulations pursuant to the Act, the situation discussed in *Chevron,* but has simply issued a policy statement. Moreover, unlike the agencies involved in *Chevron* and *Morton* the EEOC is not charged with administration of all civil rights legislation. Rather, it is simply one actor in a complex scheme designed to remedy discrimination. Finally, and most significantly, the EEOC's policy statement was not based on any particular expertise it possesses but rather upon an analysis of how the Commission expected the courts to resolve the conflict between *Bradley* and *Bowen.*

## D. *The Legal Presumption*

As the foregoing discussion demonstrates, it is not possible to discern from either the language of the Act or its legislative history any clear intent on the part of Congress that the Act is to apply either prospectively or retroactively, nor is the EEOC interpretation of the Act controlling. Accordingly, the Court must rely upon established legal presumptions to resolve the issue raised in this motion.

As set forth in the beginning of this analysis, there is a recognized conflict in the Supreme Court authority regarding the general presumption to be applied to the effect of newly enacted legislation on pending cases. In *Bradley,* the Court held that a court should apply the law in effect at the time it renders its decision unless there is clear congressional intent to the contrary or unless application of the existing law would result in manifest injustice to one of the parties. 416 U.S. at 713, 94 S.Ct. at 2017. By contrast, in *Bowen,* the Court observed that retroactivity was not favored and that congressional enactments will not be construed to have retroactive effect un-

less the language of the statute dictates that result. 109 S.Ct. at 471.

This case, unlike *Kaiser Aluminum*, requires the Court to chose between the two lines of authority since a different result is reached depending upon which presumption is applied. First, as noted at length, there is no clear congressional intent. Second, it cannot be argued in this case that retroactive application would result in manifest injustice to the defendant such that under *Bradley* and *Bowen* prospective application would be mandated. For the reasons discussed below, the Court agrees with Justice Scalia's concurrence in *Kaiser* and finds *Bowen* to be the better reasoned and supported decision, and accordingly finds the Act to apply prospectively only.

### 1. Background of the Conflict

The rule of retroactivity put forth by plaintiff has its origin in Chief Justice Marshall's opinion in *United States v. Schooner Peggy*, 1 Cranch 103, 2 L.Ed. 49 (1801). The issue in that case was whether a French vessel seized by an American ship was subject to condemnation. After the decision by the Circuit Court allowing condemnation, but before consideration by the Supreme Court, the United States and France signed a treaty providing for the return of all French property not yet definitively condemned. *Schooner Peggy*, 1 Cranch at 107. The Court found that by the terms of the treaty all property was to be returned unless it had been definitively condemned. In that case, since there was a final appeal remaining, the vessel had not been "definitively" condemned. The Court stated that "if subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed...." *Id.* at 110.

The next major development was the Court's decision in *Thorpe v. Housing Authority v. Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). *Thorpe* involved the eviction of a tenant from a fed-erally assisted, low-rent housing project. The tenant had her lease cancelled one day after her election as president of the tenants' association and the Housing Authority refused to provide her with an explanation of why she was being evicted. She sued and the case eventually reached the Supreme Court. The Court remanded the case to the North Carolina Supreme Court because while the case was pending before the Court, the Department of Housing and Urban Development promulgated a circular regulation requiring local housing authorities to provide tenants with the reasons for their evictions. *Id.* at 272, 89 S.Ct. at 520. The case returned to the Supreme Court after the North Carolina Supreme Court refused to apply the circular retroactively. The Court, however, held that the regulation was to be applied retroactively based upon "[t]he general rule ... that an appellate court must apply the law in effect at the time it renders its decision." *Id.* at 281, 89 S.Ct. at 526. As Justice Scalia points out in his concurrence in *Kaiser*, 110 S.Ct. at 1581, *Thorpe* made no mention of numerous cases announcing the contrary presumption of prospectivity. The reason according to Justice Scalia was that *Thorpe* apparently treated as "distinct the situation in which (as in *Thorpe*) the change in law occurs between the decision of a lower court and the decision of the appellate tribunal." *Id.* *Thorpe*, thus relied upon the language in *Schooner Peggy* and the few cases which involved a similar procedural posture.[10]

The final stage in the development of the presumption of retroactivity occurred in *Bradley*, 416 U.S. 696, 94 S.Ct. 2006. The Court held that a statute providing for attorney's fees in a school desegregation case, enacted while an appeal from the decision of the district court was pending, was to be applied by the court of appeals.

In the wake of *Schooner Peggy*, however, it remained unclear whether a change in the law occurring while a case

---

10. These included *Ziffrin, Inc. v. United States*, 318 U.S. 73, 63 S.Ct. 465, 87 L.Ed. 621 (1943); *Vandenbark v. Owens–Illinois Glass Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941); *Carpenter v. Wabash R. Co.*, 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940); and *United States v. Chambers*, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763 (1934).

was pending on appeal was to be given effect only where, by its terms, the law was to apply to pending cases, as was true of the convention under consideration in *Schooner Peggy*, or, conversely, whether such a change in the law must be given effect *unless* there was clear indication that it was *not* to apply in pending cases. For a very long time the Court's decisions did little to clarify this issue.

Ultimately, in *Thorpe* ... the broader reading of *Schooner Peggy* was adopted, and this Court ruled that 'an appellate court must apply the law in effect at the time it renders its decision.'

\*     \*     \*     \*     \*     \*

*Thorpe* thus stands for the proposition that even where the intervening law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect.

Accordingly, we must reject the contention that a change in the law is to be given effect in a pending case only where that is the clear and stated intention of the legislature.

*Bradley*, 416 U.S. at 713–716, 94 S.Ct. at 2017–19. The Court carved out exceptions to the rule where to apply a law retroactively would cause manifest injustice or would be contrary to clear congressional intent. *Id.* at 717–718, 94 S.Ct. at 2019–20. The *Bradley* rule is not, however, as well grounded in precedent as one would expect. *See Kaiser*, 110 S.Ct. at 1583.

The contrary position is found in *Bowen* where the Court was faced with the question of whether the Secretary of Health and Human Services had the authority to reissue retroactive regulations regarding calculation of a cap on reimbursable wage costs. The district court and court of appeals found that the rule was invalid insofar as it sought to recoup money already paid to Medicare service providers. The Supreme Court found that HHS was attempting to enact a retroactive regulation and that it was without the authority to do so. The Court noted that "[r]etroactivity is not favored in the law. Thus, congression-

al enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen*, 109 S.Ct. at 471 (and cases cited therein).

### 2.  *Kaiser* Analysis

As can be seen from the above discussion there is obviously an inconsistency between *Bradley*, based as it is upon *Thorpe*, and *Bowen*. In *Kaiser*, the Supreme Court noted this inherent conflict in the cases but refused to resolve it. Instead, the Court relied upon its finding that there was a clear congressional intent that the legislation in question, which provided for post-judgment interest in civil cases, was designed to apply prospectively.

What has emerged as the most influential, or at least most discussed, opinion in *Kaiser* is Justice Scalia's concurrence. Justice Scalia acknowledged the conflict between *Bradley* and *Bowen* and chastised the Court for not resolving the conflict. *Kaiser*, 110 S.Ct. at 1579.

> In the rules of construction that they announce, if not in the results they produce, these two lines of cases are not merely, as the Court confesses, in "apparent tension," *ante*, 110 S.Ct. at 1577; they are in irreconcilable contradiction, and have spawned Courts of Appeals opinions to match.

*Kaiser*, 110 S.Ct. at 1579 (and cases cited therein). Justice Scalia then stated that he would have resolved the conflict by admitting that the rule expressed in *Thorpe* and *Bradley* was wrong. *Id.* He argued that the proper rule of construction was the one that had been "applied, except for these last two decades of confusion, since the beginning of the Republic and indeed since the early days of common law: absent specific indication to the contrary, the operation of nonpenal legislation is prospective only." *Id.*

Justice Scalia maintained that the proposition that statutes are to be given prospective effect only is deeply rooted in our legal history.[11] *See* Smead, *The Rule Against*

---

**11.**  Among the cases cited by Justice Scalia in

support of this proposition are: *United States v.*

*Retroactive Legislation: A Basic Principle of Jurisprudence*, 20 Minn.L.Rev. 775, 781 n. 22 (1936). The opinion argued that in the 150 years prior to *Thorpe*, although the Court did not always deny retroactive effect, when it did accord such effect the reason was that the statute affirmatively required such effect. *Kaiser*, 110 S.Ct. at 1580.

Justice Scalia contended that against this background *Thorpe* and *Bradley* were based upon inapplicable authority. *Thorpe* primarily relied upon *Schooner Peggy*. This case, however, stands only for the proposition that where a law contains an express directive as to application that directive must be followed. *Schooner Peggy* made clear that courts should "struggle hard" before giving retroactive effect. *Thorpe* cited only four cases aside from *Schooner Peggy*. Two of those, *Vandenbark v. Owens–Illinois Glass Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941), and *Carpenter v. Wabash R. Co.*, 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940), involved a change of law between initial decision and appeal. *Vandenbark* gave retroactive effect to a judicial decision, and in *Carpenter* the statute demanded retroactive application on its face. *United States v. Chambers*, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763 (1934), involved a change in law that occurred between the time a criminal defendant had pleaded guilty and the time judgment was entered. Giving retroactive effect to a repealed criminal law is, according to Justice Scalia, a long held exception to the general rule against retroactive effect. *Kaiser*, 110 S.Ct. at 1579 n. 1. *See also Yeaton v. United States*, 5 Cranch 281, 3 L.Ed. 101 (1809); *United States v. Tynen*, 11 Wall. 88, 95, 20 L.Ed. 153 (1871).

Finally, *Ziffrin, Inc. v. United States*, 318 U.S. 73, 63 S.Ct. 465, 87 L.Ed. 621 (1943), involved a change that took place after a license had been applied for, but before it had been ruled upon. Justice Scalia argues that this did not involve a retroactive effect but simply required current law to be used in determining if an applicant was qualified to obtain a permit for future activity. *Kaiser*, 110 S.Ct. at 1582.

Justice Scalia analyzed *Bradley* similarly and noted that the *Bradley* Court looked only at cases which involved a change in law after an earlier adjudicatory resolution, thus excluding many of the early cases setting forth a presumption against retrospective application. *Kaiser*, 110 S.Ct. at 1583. The cases cited by *Bradley* do not, when examined closely, refute the long standing presumption Justice Scalia advanced.

They consist entirely of cases that involved retroactivity of judicial decisions rather than statutes (*Moores v. National Bank*, 104 U.S. 625 [26 L.Ed. 870] (1882); *Dorchy v. Kansas*, 264 U.S. 286 [44 S.Ct. 323, 68 L.Ed. 686] (1924); *Patterson v. Alabama*, 294 U.S. 600 [55 S.Ct. 575, 79 L.Ed. 1082] (1935); *Sioux County v. National Surety Co.*, 276 U.S. 238 [48 S.Ct. 239, 72 L.Ed. 547] (1928); *Vandenbark*, 311 U.S. 538 [61 S.Ct. 347, 85 L.Ed. 327] (1941)); cases in which the statute specifically provided for retroactive application (*Freeborn v. Smith*, 2 Wall. 160 [17 L.Ed. 922] (1865); *Stephens v. Cherokee Nation*, 174 U.S. 445, 477 [19 S.Ct. 722, 734, 43 L.Ed. 1041] (1899); *Carpenter v. Wabash R. Co.*, 309 U.S. 23 [60 S.Ct. 416, 84 L.Ed. 558] (1940); *Dickinson Indus. Site, Inc. v. Cowan*, 309 U.S. 382 [60

*Heth*, 3 Cranch 399, 413, 2 L.Ed. 479 (1806) (refusing to apply new commission rate for customs collectors to amounts bonded but not yet collected); *Murray v. Gibson*, 15 How. 421, 423, 14 L.Ed. 755 (1854) ("[a]s a general rule for the interpretation of statutes, it may be laid down, that they should never be allowed a retroactive operation where this is not required by express command and unavoidable implication."); *White v. United States*, 191 U.S. 545, 552, 24 S.Ct. 171, 172, 48 L.Ed. 295 (1903); *United States Fidelity & Guaranty Co. v. United States ex rel. Struthers Wells Co.*, 209 U.S. 306, 314, 28

S.Ct. 537, 539, 52 L.Ed. 804 (1908) ("[t]he presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible of any other"); *Union Pacific R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 34 S.Ct. 101, 58 L.Ed. 179 (1913); *United States v. Magnolia Petroleum Co.*, 276 U.S. 160, 162–63, 48 S.Ct. 236, 237, 72 L.Ed. 509 (1928) ("[s]tatutes are not to be given retroactive effect ... unless the legislative purpose so to do plainly appears"); *Miller v. United States*, 294 U.S. 435, 439, 55 S.Ct. 440, 441, 79 L.Ed. 977 (1935).

S.Ct. 595, 84 L.Ed. 819] (1940)); cases that involved prospective rather than retrospective application, because they sought injunctive relief (*Dinsmore v. Southern Express Co. and Georgia R. Comm'n*, 183 U.S. 115, 120 [22 S.Ct. 45, 46, 46 L.Ed. 111] (1901); *United States v. Alabama*, 362 U.S. 602 [80 S.Ct. 924, 4 L.Ed.2d 982] (1960)), because the issue was a permit for future action (*Ziffrin Inc. v. United States*, 318 U.S. 73 [63 S.Ct. 465, 87 L.Ed. 621] (1943)), or because the issue was whether the United States' declaration of war made it inappropriate for the trial court to continue with proceedings (*Watts, Watts & Co. v. Unione Austriaca di Navigazione*, 248 U.S. 9 [39 S.Ct. 1, 63 L.Ed. 100] (1918)); a case remanding to state court for *its* determination of the effect of a newly enacted state statute (*Missouri ex rel. Wabash R. Co. v. Public Service Comm'n*, 273 U.S. 126 [47 S.Ct. 311, 71 L.Ed. 575] (1927); and a case involving the special rule, see n. 1, *supra*, applicable to repeal of a criminal sanction (*United States v. Chambers*, 291 U.S. 217 [54 S.Ct. 434, 78 L.Ed. 763] (1934)).

It is significant that *not a single one* of the earlier case cited in *Thorpe* and *Bradley*—except of course, the cases dealing with judicial decisions rather than statutes and the cases dealing with repeal of a criminal statute—even *purports* to be applying a presumption of retroactivity. They purport to be following the *express* command of the statute, or not to be acting retroactively at all. *Kaiser*, 110 S.Ct. at 1583–4 (parallel citations omitted).

Analyzing the case, Justice Scalia noted that the record demonstrates:

(1) An unbroken line of precedent, prior to 1969, applying a presumption that statutes are not retroactive (except for the repeal of penal provisions) in *all* cases. (2) In 1969, with *Thorpe*, a departure from that tradition (based upon a misreading of our precedent) for cases in which the statute has been enacted after initial adjudication. (3) From 1969 to the present, (a) firm adherence to the prior tradition in cases not involving postadjudication enactment, and (b) the expression of adherence to the new presumption in postadjudication-enactment cases, but with only one case (*Bradley*, in 1974) where that probably produced a difference in outcome, and one case (*Bennett*,[12] in 1985) where it seemingly should have produced a difference in out come but was not permitted to do so.

*Kaiser*, 110 S.Ct. at 1585–6. From this analysis, Justice Scalia argued that the Court should have taken the opportunity to reaffirm the longstanding rule that absent specific congressional intent, statutes are to be applied prospectively. *Id.* This conforms with the oft-quoted canon of construction that judicial decisions are to be applied retroactively and statutes prospectively. *See United States v. Security Indus. Bank*, 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982).

3. Rulings by the Circuits

Only two circuits, the Sixth and the Eighth, have examined the question of whether the Civil Rights Act of 1991 is to be applied retroactively. Although both answer the question in the negative, neither directly resolved the conflict between *Bradley* and *Bowen*. In *Vogel v. Cincinnati*, 959 F.2d 594 (6th Cir.1992), the plaintiff contended that he suffered damages as a result of a hiring policy adopted by the City's police force pursuant to a consent decree. The Sixth Circuit rejected his argument that the Act should apply retroactively, reaffirming its belief, first expressed in *United States v. Murphy*, 937 F.2d 1032 (6th Cir.1991), that *Bradley* should be read narrowly and not applied where substantive rights and liabilities would be affected. The court stated that retroactive application of the Civil Rights Act would impact upon the parties' substantive rights and liabilities, and therefore the Act was not to be applied retroactively.

12. *Bennett v. New Jersey*, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), giving prospective effect to new law on grounds that "statutes affecting substantive rights and liabilities are presumed to have only prospective effect." 470 U.S. at 639–40, 105 S.Ct. at 1560.

In so ruling, the court recognized an apparent conflict between *Bradley* and *Bowen*. However, rather than resolving the conflict, the court, in light of *Bowen*, substantially limited the applicability of the *Bradley* presumption.

In *Fray v. Omaha World Herald Co.*, 960 F.2d 1370 (8th Cir.1992), the Eighth Circuit held that the Act did not apply retroactively to cases pending on appeal at the time of the statute's enactment. The court, unlike many others who have considered the issue, found the legislative history of the Act to be controlling. According to the court, the fact that the President had vetoed a similar bill which expressly provided for retroactivity, but signed the current law which had no such provision, demonstrated a legislative intent that the Act apply prospectively. The court did not specifically resolve the *Bradley–Bowen* conflict, but expressed the view that *Bowen* represented the "better rule". *Fray*, 960 F.2d at 1378.

The circuits have also addressed the conflict in cases not involving the Civil Rights Act of 1991. The Second Circuit has not directly confronted the issue, but has relied upon *Bowen* in finding that the Secretary of Transportation was estopped from applying an administrative rule retroactively where the state had relied upon the Secretary's prior communications. *Lehman v. Burnley*, 866 F.2d 33, 37 (2d Cir.1989). That case restated the familiar refrain that "[r]etroactivity is not favored in the law...." *Id.* A similar view has been expressed by a lower court in the Circuit. *See D'Arbois v. Sommelier's Cellars*, 741 F.Supp. 489 (S.D.N.Y.1990). *But see Croce v. V.I.P. Real Estate, Inc.*, 786 F.Supp.

1141 (E.D.N.Y.1992) (finding Civil Rights Act of 1991 to apply retroactively).[13]

In *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 963–4 n. 6 (D.C.Cir. 1990), then Judge Thomas discussed the conflict between *Bradley* and *Bowen*. Judge Thomas resolved the conflict in favor of *Bowen*, finding prospective application to be the normal rule absent a clear expression of congressional intent to the contrary. The Fourth Circuit, in *Leland v. Federal Ins. Administrator*, 934 F.2d 524, 528 and n. 7 (4th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991), also relied on *Bowen* as the proper rule in denying retroactive effect to an amendment of the National Flood Insurance Act providing for relocation expenses.

In *Simmons v. A.L. Lockhart*, 931 F.2d 1226, 1230 (8th Cir.1991), a judge of the Eighth Circuit found that the attorney's fees provisions of the Anti–Drug Abuse Act did not apply retroactively. The court stated that "the presumption against retroactive application best preserves the distinction between courts and legislatures: the former usually act retrospectively, settling disputes between persons, the latter usually act prospectively, setting the general rules for future conduct." *See also Criger v. Becton*, 902 F.2d 1348, 1353 (8th Cir.1990).

In *DeVargas v. Mason & Hanger–Silas Mason Co., Inc.*, 911 F.2d 1377 (10th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991), the court held that amendments to the Rehabilitation Act, 29 U.S.C. §§ 794–94a, made by the Civil Rights Restoration Act of 1987, Pub.L. No. 100–259, 102 Stat. 28 (1988), which extend-

---

**13.** The opinion in *Croce* chose *Bradley* as the governing rule based, in large part, on the understanding that the Second Circuit has often applied the *Bradley* rule in finding legislation retroactive. *See, e.g., Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir.1987); *O'Hara v. General Marine Trans. Corp.*, 740 F.2d 160 (2d Cir.1984), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985); *Leake v. Long Island Jewish Medical Center*, 695 F.Supp. 1414 (E.D.N.Y. 1988), *aff'd,* 869 F.2d 130 (2d Cir.1989). *Tirozzi* and *O'Hara* were, however, issued prior to the Supreme Court's decision in *Bowen*. As for *Leake,* the district court's opinion which was

issued prior to the decision in *Bowen*, although citing *Bradley*, relied principally upon the finding that there was clear legislative intent that the Civil Rights Restoration Act of 1987 was to be applied retroactively. The Second Circuit affirmed based primarily on the district court's finding of legislative intent, and never addressed the conflict between *Bradley* and the recently issued *Bowen*. *Leake*, 869 F.2d at 131. Although in *Leake* the court was able to conclude that Congressional intent included retroactive application, in this instance the conflicting legislative history prevents such a finding.

ed the Act's prohibitions on discrimination to all operations of post-secondary educational institutions, did not apply retroactively. The court found that there was no clear language in the Civil Rights Restoration Act regarding whether the Act was to apply retroactively. *Id.* at 1388. In light of this finding, the Tenth Circuit addressed the *Bradley–Bowen* conflict and held that the two rules were in irreconcilable contradiction and found *Bowen* to represent the correct rule utilizing an analysis similar to Justice Scalia's in *Kaiser. DeVargas,* 911 F.2d at 1390.

The Federal Circuit reached the same result in *Sargisson v. United States,* 913 F.2d 918 (Fed.Cir.1990), where it refused to retroactively apply a statute governing the composition of a military review board. The court found an irreconcilable conflict between *Bradley* and *Bowen,* and stated that "[w]e prefer the longer-standing rule that retroactivity is not presumed." *Sargisson,* 913 F.2d at 923.

Thus, a majority of the Circuits to have considered the question have adopted *Bowen* as the governing law on retroactive application of congressional enactments. *But see Federal Deposit Ins. Co. v. Wright,* 942 F.2d 1089 (7th Cir.1991) (the court gave retroactive effect to a provision of the Federal Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, § 217(4), 103 Stat. 183, 256 (1989), finding no tension existed between the cases since under *Bradley,* a statute will not apply retroactively if to do so would be manifestly unjust), *cert. denied,* —— U.S. ——, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992); *United States v. Thomas,* 916 F.2d 647, 652 n. 6 (11th Cir. 1990) (following *Bradley* ).

In sum, the Court finds the reasoning of Justice Scalia's concurring opinion in *Kaiser,* and the opinions of the various circuits favoring the *Bowen* rule, discussed herein, to be persuasive.

Prospective application of congressional enactments best conforms with the traditional view that absent specific direction to the contrary statutes are to apply prospectively, judicial decisions retroactively. The Court recognizes that this decision creates administrative difficulties in that courts will be faced with conducting cases under two sets of rules. Congress, however, had the ability to eliminate that difficulty by mandating retroactive application. The fact that political considerations may have prevented the inclusion of such a provision is not sufficient to justify ignoring the historic support for the *Bowen* rule as expressed by Justice Scalia in *Kaiser.*

### III.  *Conclusion*

For the reasons set forth herein, the plaintiff's motion is denied.

SO ORDERED.